EL PUEBLO, DEMANDANTE Y APELADO, *v.* GRACIA, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en causa por asesinato en segundo grado.

No. 1954.—Resuelto en mayo 29, 1923.

JURADOS EXCUSADOS POR LA CORTE—DISCRECIÓN JUDICIAL.—El hecho de que la corte excusara a varios jurados para conocer del juicio no constituye error pues esa es cuestión que descansa en la sana discreción de la corte, y menos en el presente caso en que cuatro de los jurados excusados justificaron razones

para la excusa y en cuanto a los dos restantes éstos no pudieron ser citados
por el márshal.

SUSPENSIÓN DEL JUICIO POR AUSENCIA DE TESTIGOS.—La sola manifestación de
que faltaban dos testigos del acusado, sin demostrar por qué eran importantes
sus declaraciones ni las diligencias practicadas para que comparecieran, no
era suficiente motivo para posponer el juicio para otro momento.

ASESINATO—PRUEBA DE LA MUERTE DE LA VÍCTIMA.—No es erróneo permitir que
un testigo declarara que vió morir a una persona.

INSPECCIÓN OCULAR—DISCRECIÓN JUDICIAL.—La corte de distrito tiene discreción
para ordenar una inspección ocular del sitio donde se cometió el crimen.

ASESINATO—ARMA OFRECIDA EN EVIDENCIA—ADMISIÓN DE PRUEBA.—Se imputó a
la corte como error el haber sido admitido como evidencia un revólver que se
alega no estaba conectado con el asesinato ni fué identificado. El testigo
Julio González declaró que oyó seis o siete disparos y que en el momento
entró el acusado donde él estaba, como a los dos minutos, y le dió un revól-
ver blanco de cabo de nácar, parecido al que le presentaba el fiscal, y que
tenía el mismo largo y el mismo cabo. *Se resolvió:* que esto era suficiente
para justificar la admisión de dicha arma.

ID.—JUICIO—RECESO DURANTE EL JUICIO—DISCRECIÓN JUDICIAL.—No puede con-
cluirse que abusó de su discreción la corte al negar la suspensión del juicio
hasta el siguiente día por el hecho de que el acusado no hubiera podido loca-
lizar dos testigos, cuando no se demostró que sus testimonios eran esenciales
en el juicio, y menos cuando en cuanto a uno de ellos no se alegó que iba a
ser utilizado como perito, sino simplemente que habían salido ya de Baya-
món para Aguadilla, que es donde se celebraba el juicio.

ID.—PRUEBA SUFICIENTE.—Examinada la prueba que se inserta en la opinión emi-
tida en este caso, el Tribunal Supremo resolvió que era suficiente para soste-
ner una sentencia de asesinato en segundo grado.

ID.—INSTRUCCIÓN SOBRE ASESINATO—ASESINATO.—En el presente caso la corte
dió la siguiente instrucción: ''Según el artículo 201 de nuestro Código Pe-
nal, todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda
clase de muerte alevosa, deliberada, y premeditada, o cometida al perpetrarse
o intentarse algún incendio de morada, constituye asesinato en primer grado.
De modo que dentro de este artículo tenemos tres diferentes clases de asesi-
nato' y el que nos ocupa se encuentra comprendido en toda clase de muerte
alevosa, intencional, deliberada y premeditada.'' Alega el apelante que el
tribunal, con las palabras que están en el último párrafo, obligó al jurado
a que resolviese el caso sin salirse del círculo que le trazó. *Se resolvió:* que
la instrucción no es errónea porque el juez no hizo otra cosa que referirse
a la acusación que se estaba juzgando contra el acusado y llamar la aten-
ción de que no se le acusaba de asesinato perpetrado por veneno, acecho o
tortura, ni al intentarse algún incendio de morada.

ID.—PENA QUE NO ES CRUEL E INUSITADA.—Una sentencia que impuso al autor
de asesinato en segundo grado la pena de veinte años de presidio con traba-
jos forzados no puede reputarse cruel e inusitada.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. E. González Mena, J. Vall-
dejuli* y *J. Soto Rivera.*

Abogado del apelado: *Sr. José E. Figueras,* Fiscal.

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

El apelante, Juan de Gracia, fué acusado en unión de otras dos personas del delito de asesinato en primer grado de Emilio Iglesias y vista su causa ante un jurado fué declarado culpable del delito de asesinato en segundo grado y sentenciado por el tribunal inferior a sufrir la pena de veinte años de presidio con trabajos forzados.

En la apelación que estableció contra la sentencia y contra la resolución que le negó un nuevo juicio, enumera diez y ocho motivos de error en apoyo de sus recursos, pero como muchos de ellos han sido considerados y resueltos por nosotros en la apelación que decidimos hoy de su coacusado Juan Ibern Santiago y declaramos que no podemos sostenerlos, nos limitaremos en esta opinión a considerar los que son distintos de aquellos. Son los señalados con los números 2, 3, 8, 9, 10, 11, 16, 17 y 18.

En el segundo motivo se alega que el tribunal inferior cometió error al excusar a varios jurados, sin causa justificada, para conocer de su juicio, pero no podemos declarar que existió tal error porque aparte de que esa es cuestión que descansa en la sana discreción del tribunal, cuatro de los jurados excusados justificaron razón para su excusa, y en cuanto a los otros dos no pudieron ser citados por el márshal porque, según informó, uno de ellos se había ausentado de su pueblo hacía más de cinco meses y el otro se hallaba en los Estados Unidos.

El día 13 de diciembre de 1921, que estaba señalado para el juicio, comparecieron los tres acusados en este caso y pidieron ser juzgados separadamente. Accedió el tribunal y entonces manifestaron sus defensores estar listos para el juicio en cuanto al acusado José Tormos, y habiendo solicitado el fiscal que fueran juzgados en el orden en que aparecen en la acusación, los defensores manifestaron que no habían com-

parecido dos testigos importantes de Juan de Gracia, pero el tribunal resolvió que el juicio de éste fuera el primero que se celebrara.   Esta resolución sirve de fundamento al tercer motivo del recurso pero no podemos declarar que fuera errónea, porque la sola manifestación de que faltaban dos testigos del acusado, sin demostrar por qué eran importantes sus declaraciones ni las diligencias practicadas para que comparecieran, no era suficiente motivo para posponer el juicio para otro momento.

El octavo error señalado se funda en haber permitido el tribunal ciertas preguntas del fiscal a los testigos.

Una de esas preguntas fué hecha a Dolores Agraít, esposa del interfecto Emilio Iglesias, quien habiendo manifestado en el juicio que su esposo estaba muerto, le preguntó el fiscal "por qué sabe que está muerto," y a ella se opuso la defensa del apelante porque la testigo no podía contestar esa pregunta y porque no se había probado debidamente dicha muerte.   Permitida por el tribunal, dicha señora contestó "que estaba muerto porque lo vió morir y lo asistió en la clínica donde murió."   Esta contestación por sí sola basta para demostrar que no existe el error alegado.

También bajo este apartado se menciona cierta manifestación hecha por el fiscal con motivo de una repregunta de la defensa al Dr. Igartúa, pero como el acusado no tomó excepción a la resolución del tribunal prescindiremos de tal cuestión.

El noveno error es por haber permitido al jurado que inspeccionara el lugar del suceso; pero tampoco lo consideraremos porque si bien el acusado se opuso a que se practicara, no tomó excepción contra la resolución del tribunal.   De todos modos tal resolución era discrecional en el tribunal.

El décimo error es por haber sido admitido como evidencia un revólver que se alega no estaba conectado con el caso ni fué identificado.   Sin embargo, el testigo Julio González declaró que oyó seis o siete disparos y que en el momento

entró Juan de Gracia donde él estaba, como a los dos minu-
tos, y le dió un revólver blanco de cabo de nácar, parecido
al que le presentaba el fiscal, y que tenía el mismo largo y el
mismo cabo.    Esto era suficiente para justificar la presen-
tación de dicha arma.

Otro error alegado, el undécimo, es por haberse permitido
declarar al testigo Pedro Figueroa.

Bastará enunciar lo que sobre este testigo se dice en el
alegato para quedar convencido de que no existe el error que
se alega por haberse permitido que declarase.    Se dice que
el testigo estaba en la cárcel para responder de un delito de
asesinato en segundo grado: que no estaba bajo las reglas de
la corte; que estaba en la sala del tribunal oyendo las decla-
raciones y que entró en las oficinas del fiscal.

Al terminar el fiscal su prueba (parece que eran las nueve
de la noche) la defensa del acusado solicitó un receso hasta el
día siguiente a las nueve, fundándose en que cuando entró en
el juicio alegó que no estaba preparada para él porque le fal-
taban dos testigos o peritos, los que "nos ha sido difícil aún
localizar;" que uno es médico y el otro profesor en balística,
y que se le acababa de telefonear una hora u hora y media
antes, que el Dr. Bocanegra había salido de Bayamón para
Aguadilla (lugar del juicio) y que todavía no había llegado.
Se opuso el fiscal a esa petición y el tribunal negó la suspen-
sión pedida, alegándose ahora en el décimosexto motivo del
recurso que tal declaración fué errónea porque el tribunal
abusó de su discreción al no conceder el receso solicitado.    No
lo creemos así porque como antes hemos dicho, nunca se de-
mostró que dichos testigos o peritos eran esenciales en el
juicio y sin este requisito no debía ser suspendido.    Además,
no se dice que el Dr. Bocanegra iba a ser perito en esa causa
sino únicamente que había salido de Bayamón para Agua-
dilla.

El décimoséptimo error es por no haberse ordenado al ju-
rado la absolución perentoria por insuficiencia de la prueba

del fiscal, y por haberse negado el tribunal a instruir al jurado que diese un veredicto absolutorio por tal falta de prueba.

El argumento del apelante descansa principalmente en no haberse probado la muerte de Emilio Iglesias, ni si fué consecuencia de las heridas de bala que recibió, ni que se las ocasionara el apelante. En el otro caso de Juan Ibern Santiago a que antes hemos hecho referencia, hemos resuelto con una prueba idéntica a la de este caso que se probaron las heridas por bala de Emilio Iglesias, su muerte y que ésta fué consecuencia de dichas heridas por lo que sólo nos resta decir ahora que hubo prueba en este caso de que Juan de Gracia fué uno de los que disparó su revólver contra Iglesias pues así lo declararon los testigos Osvaldo Peña y Luis Mendoza, habiendo manifestado otro testigo, Pedro Figueroa, que oyó varios disparos, vió al apelante con un revólver en la mano apuntando a Iglesias, y que fué quien recogió herido a Iglesias; y Julio González dijo que Juan de Gracia le entregó el revólver en seguida de los disparos, como dos minutos después. En cuanto al móvil del crímen declararon dos testigos que Juan de Gracia se oponía a que se abriera una fábrica de tabaco en Aguadilla y que Iglesias buscaba tabaqueros para dicha fábrica. En vista de esta prueba no podemos declarar que existió el error que se alega.

El décimo octavo error alegado es por no haber sido concedido un nuevo juicio.

Una de las razones que adujo el acusado para que se le concediera un nuevo juicio fué porque el tribunal dió al jurado la siguiente instrucción:

"Según el artículo 201 de nuestro Código Penal, todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda clase de muerte alevosa, deliberada, y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, constituye asesinato en primer grado. De modo que dentro de este artículo tenemos tres

diferentes clases de asesinato y el que nos ocupa se encuentra comprendido en toda clase de muerte alevosa, intencional, deliberada y premeditada."

Alega el apelante que el tribunal con las palabras que están en el último párrafo, obligó al jurado a que resolviese el caso sin salirse del círculo que le trazó. No lo entendemos así, pues el juez no hizo otra cosa que referirse a la acusación que se estaba juzgando contra el acusado y llamar la atención de que no se le acusaba de asesinato perpetrado por veneno, acecho o tortura, ni al intentarse algún incendio de morada.

Las otras razones para nuevo juicio fueron las mismas que han sido alegadas como errores contra la sentencia y que ya hemos considerado y resuelto que no existen.

Al terminar el apelante la argumentación de los expresados errores, agrega otros dos, el décimonono y el vigésimo.

Fúndase el primero de ellos en haber sido negada su petición de que no se dictara sentencia y se declarase nulo el veredicto del jurado por ser contrario a la evidencia por no haberse probado que Iglesias muriera a consecuencia de herida alguna, la fecha en que ocurrieron los hechos, ni que el apelante lo hiriera. No tenemos que considerar estas cuestiones porque ya las hemos decidido antes.

El otro es por haberse impuesto al apelante veinte años del presidio, pena que se alega es cruel e inusitada y prohibida por nuestra Ley Orgánica. La pena de presidio por término mínimo de diez años, señalada por el artículo 202 del Código Penal para el delito de asesinato en segundo grado, no es ni ha sido nunca considerada como cruel ni inusitada.

La sentencia apelada debe ser confirmada, y también la resolución que negó el nuevo juicio.

*Confirmadas la resolución y sentencia apeladas.*

Juez concurrente: Sr. Presidente del Toro.

El Juez Asociado Sr. Hutchison firmó "Conforme con la sentencia."

Los Jueces Asociados Sres. Wolf y Franco Soto no intervinieron en la resolución de este caso.