El Pueblo de Puerto Rico, demandante y apelado, *v.* Federico Rivera León, acusado y apelante.

Núm. 11765.—*Sometido:* Abril 9, 1947. *Resuelto:* Abril 30, 1947.

*Ernesto Ramos Antonini* y *Víctor Gutiérrez Franqui,* abogados del apelante; *Hon. Procurador General Interino Luis Negrón Fernández,* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El apelante fué acusado de asesinato en primer grado. Se le juzgó ante un jurado en la Corte de Distrito de Caguas y fué convicto de homicidio voluntario.. Apela de una sentencia imponiéndole diez años de presidio.

Alega el apelante que la corte de distrito cometió error al desestimar su alegación de exposición anterior. Esta alegación se basaba en el hecho de que en un juicio anterior por la misma acusación, la corte inferior declaró un *mistrial* y disolvió el jurado, después de haber el Pueblo presentado toda su prueba y mientras el acusado ofrecía la suya.

En el segundo juicio el acusado no ofreció en evidencia, en apoyo de su alegación de exposición anterior, la trans-

cripción de la evidencia en relación con el incidente de mistrial. El récord sólo contiene la resolución de la corte inferior declarando un mistrial. De conformidad con dicha resolución, el acusado solicitó un mistrial por el fundamento de que tres miembros del jurado habían salido fuera del distrito judicial de Caguas durante el fin de semana. La resolución dice que "los abogados de la defensa solicitaron la suspensión de este caso, temporalmente, hasta tanto la Corte procediese a hacer una investigación sobre ese particular, moción a la cual se allanaron de manera expresa los tres fiscales..."

La resolución dispone entonces que la corte "procedió a practicar la investigación que fuera solicitada por la defensa y a la cual se allanaron los fiscales" y ha llegado a la conclusión de que tres miembros del jurado salieron del distrito de Caguas, acompañados de un márshal,(1) con el propósito de dar un paseo y comer, y que los otros nueve miembros del jurado fueron a un cine dentro del distrito, acompañados también de otro márshal. Sin embargo, llegando a la conclusión de que nada impropio ocurrió en éstas o en otras ocasiones. desde el comienzo del juicio, la corte dijo que "por esos hechos no hay base en ley para decretar con lugar la moción de 'mistrial'."

La corte no obstante "por el bien del acusado declara con lugar la moción de disolución del jurado presentada por la defensa" porque en el curso de la investigación declararon tres jurados y "éstos por su forma de declarar han llevado al ánimo de esta Corte la convicción que estos tres caballeros no están en condición de dictar un veredicto justo e imparcial. Además la Corte entiende que por haberse publicado en la prensa diaria el hecho de que fueron los abogados de la defensa los que presentaron la moción de disolución del jurado y solicitaron la investigación, los doce caballeros del jurado se han enterado de este hecho, lo cual

(1) Esto fué en violación del artículo 260 del Código de Enjuiciamiento Criminal.

sin duda alguna, a juicio de este Juez, puede influir en sus deliberaciones desfavorablemente para el acusado.''

La disolución de un jurado a moción del acusado o con su consentimiento, expreso o implícito, le impide alegar exposición anterior en un juicio posterior por la misma acusasión. Miller *on Criminal Law*, págs. 537, 539; Abbott, *Criminal Trial Practice*, pág. 161 (4ta. ed.); *Pueblo* v. *Plata*, 43 D.P.R. 464, 467; *State* v. *Brunn*, 154 P.2d 826 (Wash., 1945); *Holt* v. *State*, 59 N. E.2d 563 (Ind., 1945); *Mack* v. *Commonwealth*, 15 S.E.2d 62 (Va., 1941); *Coppage* v. *State*, 71 P.2d 509 (Okla., 1937); *State* v. *Reynolds*, 131 S. W.2d 552 (Mo., 1939); *White* v. *State*, 214 P. 202 (Okla., 1923); *Commonwealth* v. *Gray*, 60 S.W.2d 133 (Ky., 1933); *State* v. *Slorah*, 106 Atl. 768 (Me., 1919); *State* v. *Woo Dak San*, 290 P. 322 (N. M., 1930); 44 Col. L. Rev. 87, 88, notas 9, 11; 159 A.L.R. 750, 759; 38 A.L.R. 706. *Cf. Louisiana* v. *Resweber*,___U. S.___, 91 L. ed. 359, 361. El acusado no impugna esta proposición. Pero alega que su moción no fué declarada con lugar y que él no consintió al mistrial. Arguye que, contrario a lo que él esperaba, la corte condujo una investigación privada y, después de resolver que no había base para sostener su moción, eso no obstante declaró un mistrial por otros motivos; que la corte, por tanto, declaró en efecto un mistrial *moto proprio;* y que bajo las circunstancias su silencio cuando la corte tomó esta acción no implica consentimiento.

■■ Convenimos con el acusado en que los hechos sobre los cuales se basa una moción de mistrial deben de ordinario ser determinados por métodos judiciales, y que el acusado tiene el derecho a estar presente y participar en ellos. Véanse 125 A.L.R. 694, 699; *Salistean* v. *State*, 215 N. W. 107 (Neb., 1927); *cf. Pueblo* v. *Saldaña*, 66 D.P.R. 189. Pero en este caso la resolución de la corte inferior no nos dice si el acusado solicitó de la corte que condujera una investigación privada o "judicial". De todo lo que se desprende de la resolución el propio acusado puede haber solicitado que la

corte entrevistara a los jurados privadamente, con el fin de evitar el prejuicio que quizás podría surgir contra el acusado si su abogado interrogaba a los jurados implicándoles conducta impropia por parte de ellos, y su moción era luego declarada sin lugar. Por otro lado, pudiera ser que el acusado solicitara de la corte que no suspendiera completamente el caso, sino que suspendiera la presentación de prueba sobre la culpabilidad o inocencia con el fin de conducir en corte abierta una vista sobre su moción, incluyendo la presentación de prueba en apoyo de la misma. Pero aun si supusiéramos que el acusado solicitó una investigación "judicial" y que la investigación de la corte inferior fué por tanto impropiamente conducida, no podemos llegar a la conclusión de que este mistrial constituye base adecuada para una alegación de exposición anterior.

Debe tenerse en cuenta que todo este asunto fué iniciado por el acusado, quien solicitó el mistrial por el fundamento de que tres jurados habían salido fuera del distrito. Ya le llamemos "judicial" a la investigación posterior de la corte de distrito o ya le llamemos privada, el acusado no protestó cuando la corte inferior dijo que declaraba con lugar *su* moción no solamente debido a la información que había adquirido de los tres jurados, si que también porque la publicidad dádale a la moción del acusado sería perjudicial a éste. Aun si supusiéramos que la corte técnicamente no estaba declarando con lugar la moción del acusado porque su resolución se basó en fundamentos algo diferentes a los expuestos por el acusado; la corte dijo que *estaba* declarando con lugar *su* moción, y manifestó claramente que lo hacía debido a posible prejuicio contra el acusado. El silencio y aquiescencia del acusado frente a esta manifestación de la corte, no puede razonablemente interpretarse de otra manera que no sea la de que el acusado implícitamente consentía al mistrial.

El silencio en otras circunstancias puede no implicar consentimiento, especialmente donde la actuación no es causada

por el proceder del acusado. Pero aquí éste con su moción dió lugar a sucesivos acontecimientos que trajeron por resultado lo que solicitó en su moción. Si el consentimiento no se infiere bajo estas circunstancias, es difícil concebir una situación en la que se infiera tal consentimiento.

Los casos citados aquí resuelven que si la corte sentenciadora disuelve el jurado debido a urgente necesidad, el acusado no puede invocar la alegación de exposición anterior en un juicio posterior, aun cuando dicha disolución se lleve a cabo sin su consentimiento. Sin embargo, no tenemos que determinar si aquí existió tal urgente necesidad, en vista de nuestra conclusión de que el acusado dió su consentimiento implícito al mistrial.

El apelante señala como su segundo error la negativa de la corte inferior a someter al jurado como cuestión de hecho, la de si el acusado consintió a la disolución del jurado en el primer juicio. El acusado descansa en *Pueblo* v. *Pérez,* 47 D.P.R. 765. Resolvimos en dicho caso que una alegación de exposición anterior (pág. 788) "puede envolver una cuestión de hecho que debe someterse al jurado o simplemente una de derecho que puede ser resuelta por la corte."

En este caso no hubo controversia sobre los hechos. En verdad, de existir tal controversia, no podríamos pasar sobre ella ya que el récord no contiene evidencia alguna ofrecida por el acusado en apoyo de su alegación. Las partes aceptaron aquí los hechos sin controversia alguna. El único problema era el efecto legal de estos hechos no controvertidos. Y esa cuestión de derecho cae dentro de la exclusiva competencia de la corte de distrito.

En su tercero y último error el acusado se queja de una resolución de la corte inferior sobre la admisibilidad de evidencia. La cuestión surgió cuando el acusado le preguntó a uno de sus testigos desde cuándo conocía al interfecto, respondiendo el testigo: "Lo conocía desde el primer día en que ingresé en la policía que llegando a San Ciriaco

me acometió a mí." El fiscal solicitó la eliminación de la frase "me acometió a mí." Se retiró el jurado y el acusado ofreció probar, con el testigo y con una copia certificada de la sentencia, que nueve meses antes de la muerte ocurrida en el presente caso, el interfecto había sido convicto de acometimiento y agresión por haber atacado al testigo, y que el acusado tenía conocimiento de estos hechos cuando dió muerte a la víctima. Toda vez que aquí estaba envuelta la cuestión de defensa propia, el acusado, citando *Pueblo* v. *Cruz,* 65 D.P.R. 172, alega que la corte inferior cometió error al eliminar ésta parte de la contestación del testigo y no permitir prueba de la sentencia condenatoria en este acto específico de violencia del interfecto.

El Fiscal de este Tribunal alega que es de aplicación la doctrina del caso de *Cruz* solamente si se derrama sangre. Pero cuando en dicho caso resolvimos que eran admisibles las convicciones de "delitos de sangre," estábamos traduciendo la frase "crimes of violence" usada en los casos de los Estados Unidos. Véanse casos citados en la opinión del caso de *Cruz;* 1 Wigmore *on Evidence,* sec. 198, pág. 677; 2 id. sec. 248, págs. 62–64. *Cf.* 15 U.S.C.A. sec. 901(6), según quedó enmendada por la Ley Pública 15, Congreso 80, aprobada el 10 de marzo de 1947. En dichos casos la fórmula es si el acto cometido fué un delito de violencia independientemente de si se derramó sangre o no. Por tanto somos de opinión que cuando como en este caso la cuestión planteada es la defensa propia, convicciones anteriores por acometimiento y agresión caen dentro de la categoría de delitos de violencia establecida por el caso de *Cruz.*

Sin embargo, no resolvimos en el caso de *Cruz* que las convicciones del interfecto de delitos de violencia son admisibles automáticamente en un caso de asesinato, cuando el acusado alega defensa propia, independientemente de su naturaleza, número, o fechas. Dijimos, citando 2 Wigmore, supra, sec. 248, pág. 65, que bajo ciertas circunstancias la admisión de tal convicción del interfecto descansa en la dis-

creción de la corte sentenciadora. Y aquí la corte inferior citó, entre otras autoridades, esta misma sección al excluir la sentencia condenatoria.

La teoría del acusado fué la siguiente: Quince o veinte días antes de la muerte el acusado, un policía insular, arrestó a César Carrillo, el interfecto, quien era soldado. En aquella ocasión Carrillo resistió el arresto, otro policía tuvo que ayudar al acusado a conducir a Carrillo al cuartel de la policía, y Carrillo empleó lenguaje soez, insultante y amenazante para con el acusado. Dos días antes de ser muerto, Carrillo vino al pueblo con pase, se excedió en su licencia, se vistió con ropas civiles, y dijo que esperaba ver al acusado, contra quien había proferido frases amenazadoras, las cuales fueron comunicadas al acusado. Éste y Carrillo se encontraron en un restaurante. Carrillo agredió al acusado, fué arrestado, y llevado al cuartel de la policía. El interfecto estaba sentado en la sala de retén cuando el acusado entró. Viendo al acusado entrar a la sala, agarró una cachiporra que estaba sobre una mesa e hizo ademán de lanzarse contra el acusado. Éste, temeroso de recibir grave daño corporal, disparó a Carrillo ocasionándole la muerte.

La corte de distrito permitió que se introdujera prueba en apoyo de esta teoría del acusado. Esta prueba incluía (1) supuestas amenazas hechas por Carrillo contra el acusado quince días antes de y también la noche víspera de la muerte, a otros policías quienes las comunicaron al acusado, y (2) supuestos ataques anteriores de Carrillo al acusado.

Por tanto se concedió al acusado amplia oportunidad de desarrollar su teoría al efecto de que el carácter pendenciero de Carrillo, del cual tenía conocimiento el acusado, creó en él un temor de grave daño corporal cuando Carrillo lo agredió, según se alega, con una cachiporra en la sala de retén del cuartel. Si la convicción de Carrillo por acometimiento y agresión hubiera sido la única evidencia ofrecida por el acusado para probar el carácter pendenciero de Carrillo, quizás su exclusión sería un error que diera lugar a la re-

vocación. Pero la corte de distrito ya había admitido bas-
tante evidencia tendiente a demostrar amenazas, conducta
violenta y agresiones de Carrillo dirigidas expresamente al
acusado inmediatamente antes de la muerte. La admisión
en evidencia de la sentencia condenatoria de Carrillo ante
la corte municipal por acometimiento y agresión contra otro
policía, por lo que se le impuso una multa de $50 nueve me-
ses antes de ser muerto por el acusado, por tanto habría
añadido poco, de añadir algo, a la prueba abundante ya
ofrecida por el acusado para sostener su contención de que
dió muerte a Carrillo porque tenía el temor de recibir grave
daño corporal debido al conocimiento que tenía del carácter
pendenciero del interfecto. Bajo esas circunstancias no fué
un abuso de discreción que redunde en error perjudicial el
que la corte inferior excluyera esta prueba.

*La sentencia de la corte de distrito será confirmada.*