El Pueblo de Puerto Rico, demandante y apelado, *v.* Juan Vázquez Suárez, acusado y apelante.

Núm. 12407.—*Sometido:* Diciembre 2, 1947. *Resuelto:* Enero 26, 1948.

68

*Ernesto Ramos Antonini, Samuel R. Quiñones* y *José R. Fournier,*
abogados del apelante; *Hon. Procurador General Luis Negrón
Fernández* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,*
abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Este caso viene a nuestra consideración por segunda vez.
Se acusó al apelante de asesinato en primer grado. Se le
celebró juicio y el jurado lo halló culpable de homicidio voluntario, imponiéndole la corte ocho años de presidio. En
apelación revocamos la sentencia y ordenamos la celebración
de un nuevo juicio. *Pueblo* v. *Vázquez,* 66 D.P.R. 412. Se
juzgó nuevamente al acusado de asesinato en primer grado,
el jurado lo declaró convicto de homicidio voluntario y la
corte le impuso una pena de ocho a diez años de presidio.
Nuevamente el acusado apela señalando la comisión de veintiséis errores.

Los errores 1ro. y 2do. se basan en la actuación de
la corte de distrito al excusar el día antes de comenzar el juicio y por el resto del término, el panel regular del jurado,

compuesto de 31 jurados, y al ordenar la desinsaculación de un panel regular de 24 jurados, de un panel extraordinario de 12 jurados y de un panel especial de 20 jurados. La corte inferior actuó en esta forma durante el juicio de otro caso de asesinato. Cuando el jurado en dicho caso se disponía a retirarse a deliberar, la corte ordenó la desinsaculación de los referidos paneles regular y especial porque "hay varios casos de asesinato de cierta importancia y de que no hay suficientes jurados actuando para ver los casos de asesinato".

En cuanto a los 12 jurados que se disponían a deliberar, la corte pudo haber creído que no terminarían sus deliberaciones antes del comienzo del presente caso. El hecho de que ellos llegaran a un veredicto antes de que empezara este caso, no quiere decir que sea errónea la actuación de la corte inferior al excusarlos. O la corte quizá creyó que estos 12 jurados habían prestado suficientes servicios durante dicho mes y merecían que se les excusara. De igual manera pudo la corte haber excusado por este último motivo el resto de los 31 jurados que integraban el panel.

De cualquier modo, contestamos la contención del apelante con el lenguaje empleado en el caso de *Pueblo* v. *Pérez*, 47 D.P.R. 765, 770, a saber: "En cuanto a la selección de los doce jurados que intervinieron en la causa y rindieron el veredicto, pudo sin duda la corte aprovechar los jurados que ya habían sido citados para otros casos. No lo hizo así. Ordenó la citación de un nuevo panel regular y de dos especiales necesarios a virtud del gran número de recusaciones. Bajo las circunstancias concurrentes no creemos que la corte se separara de tal manera del procedimiento marcado en la ley ni ejercitara su discreción en tal forma que pueda concluirse que violó algún derecho fundamental del acusado. No se demostró prejuicio. Véanse los artículos 199 y 202 del Código de Enjuiciamiento Criminal.

El apelante alega que el caso de *Pérez* está en conflicto con los artículos 199 y 202. Su argumento es que de confor-

midad con el artículo 202, el panel regular puede ser aumentado, pero que dicho panel regular después que empieza a prestar servicios no puede a discreción de la corte ser excusado de seguir prestando servicios para ser sustituído por un panel general completamente nuevo. No hallamos que el artículo 202 limite en esta forma la discreción de la corte sentenciadora y reafirmamos la regla establecida en el caso de *Pérez*. Nada de lo que dijimos en el caso de *Pueblo* v. *Morales*, 66 D.P.R. 10, 16, está en conflicto con el caso de *Pérez*.

■ Los errores 3ro., 4to., 5to. y 22ndo. envuelven la misma cuestión. El apelante alega que la corte inferior cometió error al desestimar su contención al efecto de que la convicción del delito de homicidio voluntario en el primer juicio, equivalió en efecto legal a una absolución de los delitos de asesinato en primer y segundo grados, y en su consecuencia al juzgársele aquí por asesinato en primer grado, se le expuso por segunda vez por el mismo delito.

La Corte de Circuito de Apelaciones ha resuelto, confirmando nuestra sentencia en *Pueblo* v. *Carbonell*, 36 D.P.R. 526, reconsideración denegada en 36 D.P.R. 761, que después de un juicio por asesinato, un veredicto de homicidio, y una revocación en apelación, un acusado no es expuesto por segunda vez cuando se le celebra el nuevo juicio por asesinato y no se limita a homicidio. *Carbonell* v. *People of Porto Rico*, 27 F.2d 253 (C.C.A. 1, 1928). Al mismo efecto, Miller *on Criminal Law*, sec. 187, pág. 543, y casos citados en las notas 56 y 57. Véanse artículo 302, Código de Enjuiciamiento Criminal; *Pueblo* v. *Colón*, 65 D.P.R. 760. No convenimos con el apelante en que el lenguaje del caso de *Pueblo* v. *Torres*, 39 D.P.R. 605, 607, constituye una revocación del caso de *Carbonell*.

■ El error 13ro. está relacionado con estos últimos errores. Arguye el acusado que la corte de distrito cometió error al no permitirle argumentar su moción al efecto de que no podía acusársele de asesinato en vista de su convicción

anterior por homicidio voluntario. Esta moción había sido radicada por escrito y ya se había declarado sin lugar. Al acusado tratar de renovarla cuando se desinsaculaba el jurado, la corte indicó que el asunto estaba ya resuelto por el caso de *Carbonell* y por su resolución anterior dada por escrito y se negó a oír argumentación sobre la cuestión.

El apelante descansa en el caso de *Pueblo* v. *Díaz*, 67 D.P.R. 80. Éste es completamente inaplicable. En él resolvimos que una corte no puede negarse a oír el informe sobre los méritos de un caso después de haber concluído la prueba en el mismo. No conocemos regla alguna que exija a una corte oír argumentación en presencia del jurado sobre cada cuestión de derecho que el abogado pueda concebiblemente levantar durante el juicio de un caso. Esto es particularmente cierto cuando, como en este caso, la cuestión ya había sido planteada por escrito y había sido desestimada como cuestión de derecho debido a que la contención del acusado era enteramente improcedente en virtud de una decisión de este Tribunal que resolvía exactamente la misma cuestión.

■ El 6to. error se dirige a la negativa de la corte de distrito para que se dejara la toma de juramento de todos los jurados hasta que las partes hubieran agotado todas sus recusaciones. Hemos resuelto que esta cuestión descansa en la sana discreción de la corte de distrito. *Pueblo* v. *Torres*, 48 D.P.R. 39. "Y solamente si resolviéramos que el emplear el sistema preferido por la corte de distrito constituyó abuso de su discreción, perjudicando los derechos del acusado bajo los hechos de este caso específico, estaríamos justificados en revocar la sentencia por este motivo." *Pueblo* v. *Morales*, 66 D.P.R. 10, 15. No se demostró que en este caso existiera abuso de discreción alguno.

■■ El 7mo. error se refiere a la exclusión del jurado Joaquín Torres. En el *voir dire* de este jurado ocurrió lo siguiente: "Defensa: ¿El otro señor se llama?—R. Joaquín

Torres.—P. ¿De dónde es el señor Torres?—R. De Corozal.—P. ¿A qué se dedica?—R. Soy torcedor.—P. ¿El señor Torres conoce los hechos de este caso?—R. Sí, señor, los conozco.—P. ¿Conoció al señor Alfredo San Miguel?—R. Al señor San Miguel no lo conocí.—P. ¿Conoce al acusado?—R. Al acusado sí lo conozco.—P. ¿El señor Torres se encuentra en condiciones de rendir un veredicto justo e imparcial de acuerdo con la prueba que se practique en este caso?—R. No, señor.—P. ¿No se encuentra en esas condiciones?—R. No me encuentro en esas condiciones.—P. ¿Esa actitud del señor jurado se debe a que tiene información del caso? ¿Conoce el caso?—R. Lo conozco.—P. ¿Por información conoce el caso?—R. Por información sí, señor.—P. ¿El señor jurado no podría rendir un veredicto justo e imparcial en este caso?—R. No. No me encuentro en condiciones.—P. ¿Tiene opinión formada?—R. Sí, señor.—Hon. Fiscal: Sin objeción a la recusación motivada del señor Torres.—Defensa: Yo no he hecho la recusación.—La Corte: La Corte lo excusa porque este señor ha dicho que es de Corozal; que conoce los hechos; que tiene opinión formada; aunque su señoría no se opone a que él se vaya, la Corte cree que teniendo este señor opinión formada no debe ser jurado para juzgar ningún caso, ni éste ni ningún otro. La Corte lo excusa. Hasta el lunes puede irse.—Defensa: Excepción.''

No podemos convenir con el acusado en que esta actuación de la corte cae dentro de la doctrina establecida en la primera apelación de este caso. *Pueblo* v. *Vázquez,* supra. Contrario a lo allí ocurrido, la corte de distrito no recusó perentoriamente al jurado por su propia cuenta debido a las contestaciones a las preguntas que no podían ser la base para una recusación motivada. Aquí el jurado, respondiendo a un interrogatorio del acusado, manifestó tres veces que no estaba en condiciones de emitir un veredicto justo e imparcial. Artículo 226, inciso 2; artículo 227, inciso 7, Có-

digo de Enjuiciamiento Criminal.(¹) Es cierto que el acusado dijo que no recusaba motivadamente al jurado. Pero no hay regla que exija a la corte dejar en el jurado a un ciudadano que repetidamente manifiesta que no puede actuar de manera imparcial, simplemente porque las partes no lo recusen. Por el contrario, bajo estas circunstacias, la corte de distrito puede actuar *sua sponte* y en uso de su discreción excusar al jurado. *Cf. Pueblo* v. *Cruz,* 60 D.P.R. 116; *Pueblo* v. *Gracia,* 31 D.P.R. 910; *Pueblo* v. *Morales, (a) Yare Yare,* 14 D.P.R. 234. En el caso de *Morales* dijimos que (pág. 244) " . . . el tribunal, por su propia moción y por una buena razón puede excusar a un jurado capacitado para servir como tal, de formar parte del 'panel' y asistir a sus sesiones en una causa criminal . . . ".

Al argumentar este error, sostiene el acusado que su interrogatorio de Torres fué interrumpido por el fiscal, y que él tenía el derecho de concluir el interrogatorio del jurado con el fin de demostrar que éste podía servir de manera imparcial no empece su opinión; v. g., que dicha opinión desaparecería al oír la prueba. Véase *Walker* v. *Greenberger,* 63 Cal.App.2d 457, 463–64 (Calif., 1944). Sin embargo, si bien el abogado del acusado tuvo amplia oportunidad para hacerle esta pregunta al jurado, nunca lo hizo. No solicitó permiso para hacerle al jurado ésta o algunas otras preguntas. Sencilla-

mente se limitó a anotar una excepción a la decisión de la corte. Su silencio indudablemente indujo a la corte a creer que no tenía más preguntas que hacer. Bajo dichas circunstancias no puede quejarse ahora de que si hubiera insistido en el asunto, el jurado quizá hubiera cambiado su contestación, repetida tres veces, de que no podía actuar de manera imparcial.

El 8vo. error es sustancialmente similar al séptimo. Raúl Ramírez, otro presunto jurado, declaró en el *voir dire*, a preguntas del fiscal, que con motivo de su amistad con Alfredo San Miguel, la víctima en este caso, y con su familia, él no estaba "en condiciones de poder juzgar este caso, pesar la prueba, y rendir un veredicto justo e imparcial." La corte entonces lo excusó.

El acusado afirma que la corte excluyó a este jurado sin recusación alguna y sin darle al acusado una oportunidad de examinarlo. Quizá la corte actuó con alguna ligereza al excusar al jurado antes de que éste fuera examinado por el abogado del acusado. Pero bajo estas circunstancias, el abogado del acusado no debe guardar silencio. Es su deber hacer constar afirmativamente que desea examinar al jurado. En verdad, el acusado ni siquiera objetó o anotó excepción a esta actuación de la corte. Del récord ante nos no surge que la corte de distrito abusara de su discreción al excusar a un jurado que dijo que no podía rendir un veredicto justo e imparcial.

El 9no. error envuelve la exclusión de José Taboas como jurado. Este declaró que su esposa era prima del acusado, que él ya tenía opinión formada en cuanto a los hechos, y que la prueba podía hacerle cambiar de opinión.

No es necesario que determinemos si el Fiscal de este Tribunal tiene razón al argüir que Taboas podía ser recusado motivadamente con motivo de su opinión o en virtud del artículo 227, inciso 2, del Código de Enjuiciamiento Criminal. Entendemos que lo que él quiso decir fué que su esposa era prima hermana del acusado. Por tanto estaba

emparentado con el acusado dentro del cuarto grado de afinidad y podía ser recusado por parcialidad implícita bajo el art. 227, inciso 1. *Cambron* v. *State,* 137 S.E. 780 (Ga., 1927); *People* v. *Schmitz,* 94 P. 407 (Calif., 1908); 12 Am. St.Rep. 108. Véanse *State* v. *Thomas,* 174 S.W.2d 337 (Mo., 1943); 18 A.L.R. 375; 19 A.L.R. 1410; 99 A.L.R. 672.

El 10mo. error trata de la actuación de la corte de distrito al excusar a Daniel Calderón como jurado. En su *voir dire,* éste le dijo al acusado lo siguiente: "P. ¿El señor Calderón se encuentra en condiciones de rendir un veredicto justo e imparcial en este caso?—R. Sí, señor.—P. ¿Conoce los hechos de este caso?—R. Yo conozco algo del caso. Tengo opinión formada del caso. Yo tengo relaciones comerciales con Juan Martínez y con Juan Rodríguez del pueblo de Corozal y me han informado del caso.—P. ¿De modo que el señor Daniel Calderón no se encuentra en condiciones de actuar como jurado en este caso?—R. Yo no me encuentro en condiciones porque yo conozco los hechos por lo que me han contado.—P. ¿Usted tiene opinión formada?—R. Sí, señor. —P. ¿De modo que no se encuentra en condiciones de poder rendir un veredicto justo e imparcial de acuerdo con la prueba que se practique en este caso?—R. No, señor.—P. ¿Pero esa opinión suya que tiene usted formada puede ser variada por la prueba que se practique en este caso?—R. Puede ser que con la prueba pueda ser variada.—P. ¿De modo que no es una opinión arraigada?—R. No, señor."

Mientras el fiscal interrogaba a este jurado, ocurrió lo siguiente: "P. ¿El señor Daniel Calderón es de Toa Alta?— R. Sí, señor.—P. ¿Me parece que le oí decir a preguntas del compañero de la defensa que usted tenía opinión formada en relación con los hechos que informan este caso?—R. Sí, señor.—P. ¿Esa opinión la formó el señor Calderón con motivo de qué?—R. Bueno de acuerdo con un cambio de impresiones que tuve con personas de Corozal. Yo estuve en Corozal en donde ocurrieron los hechos; yo visité a Corozal y me contaron los hechos personas de allí de Corozal que lle-

van relaciones conmigo; me dijeron cómo sucedieron los hechos, me lo informaron . . .—P. ¿Y además usted ha leído la prensa?—R. Sí, señor, lo que dijo la prensa lo leí.— P. ¿Y todo eso le ha hecho formar opinión a usted?—R. Creo que sí.—P. ¿Creo que sí o es que está seguro que tiene opinión formada?—R. Seguro que tengo opinión formada.—La Corte: La Corte cree que debe excusar al señor jurado para servir en este caso.—Defensa: Excepción y entendemos (sic) para el récord porque no ha habido recusación alguna por ninguna de las dos partes.''

Aquí la cuestión es un poco más cerrada. El jurado no dijo que su opinión no podía cambiarse por la evidencia. Por otro lado, tampoco indicó en forma afirmativa que su estado de ánimo era tal que una vez que oyera la prueba, su opinión podría cambiar. Y declaró dos veces que no estaba en condiciones de emitir un veredicto justo e imparcial. El caso está en la zona crepuscular donde procede el ejercicio de la discreción de la corte inferior. La corte de distrito vió y oyó al jurado. Aparentemente se convenció que la vacilación de éste al discutir su opinión justificaba que se le excusara. Bajo todas estas circunstancias, no podemos decir que la corte de distrito abusara de su discreción.

 El 11mo. error trata de la actuación de la corte de distrito al excusar a Manuel Angel Monclova. Este jurado le informó a la corte que él recibía ''compensación'' por haber servido como soldado, y no sabía si de acuerdo con la ley él podía actuar de jurado y recibir un cheque por sus servicios. La corte le dijo: ''No tenga ninguna intranquilidad: el hecho de servir como jurado es un servicio que se le presta a la causa.''

Luego ocurrió lo siguiente: ''El jurado Manuel Angel Monclova: ¿Puedo decir algo?—La Corte: Cómo no.—Jurado: Al yo recibir la dieta aquí como jurado ése es un dinero que yo tengo que reportar al gobierno federal y eso a mí me tiene preocupado en tal forma y eso de recibir el dinero de la dieta yo tengo que informarlo a la asociación y

yo no he tenido tiempo. Yo llegué a mi casa a las nueve de la noche. Eso me tiene preocupado a mí.—La Corte: La Corte le dice al jurado que no va a incurrir en ningún delito y que no tiene que preocuparse.—Defensa: Nosotros quisiéramos saber si el señor jurado tiene esa preocupación todavía.—Jurado: La tengo todavía.—P. ¿La tiene todavía esa preocupación?—R. Sí, señor.—P. ¿Esa preocupación le impide estar aquí tranquilo con serenidad?—R. Sí, señor. —Hon. Fiscal: Nosotros nos allanamos a que la Corte lo excuse motivadamente.—La Corte: La Corte lo excusa por esa razón.''

Aquí también tenemos una situación en que hay que descansar casi totalmente en la discreción de la corte sentenciadora. Nos es difícil determinar si la preocupación del jurado era tan intensa que se hacía necesario que se le excusara. Sólo podemos decir que no encontramos que la corte abusara de su discreción. Esto es particularmente cierto cuando, como en este caso, el acusado guardó silencio al sugerir el fiscal que se excusase al jurado. No hizo preguntas ulteriores y no objetó ni tomó excepción.

El error 12do. trata de la exclusión por la corte de distrito del jurado Luis Monclova Monge. Este jurado declaró, al interrogarle en su *voir dire* el abogado del acusado, lo siguiente: ''¿El señor Monclova conoce los hechos que se van a ventilar en el día de hoy?—R. Los conozco por todos los ángulos.—P. ¿Conoce al acusado por todos los ángulos? —R. Sí, señor: por la prensa y por amigos míos de Corozal yo los conozco. Voy a Corozal y veo los amigos y la última vez que estuve uno de los amigos míos conversó conmigo del caso.—P. ¿Usted fué uno de los jurados que intervino en el otro caso?—R. Sí, señor.—P. ¿Me podría informar si usted tiene opinión formada en este caso?—R. Sí, señor.—P. ¿Puede actuar como jurado en este caso?—R. No, señor.—P. ¿No se encuentra en condiciones de apreciar la prueba y rendir un veredicto de acuerdo con la prueba que desfile en este caso?—R. El veredicto mío ya está hecho de

antemano.—La Corte: Puede irse hasta el lunes. La Corte lo excusa.—Defensa: Tomamos excepción de eso.''

Es obvio que la corte inferior no cometió error al excusar a este jurado sin esperar a que el fiscal lo interrogara o que cualquiera de las partes de manera formal lo recusara motivadamente. El permitir que dicho jurado actuara sería burlarse de la administración de justicia.

 Los errores 16to. y 17mo. se basan en la negativa de la corte inferior para que se permitiera al acusado interponer ante el jurado la alegación de exposición anterior y la negativa de la corte para que declarase un *mistrial* por la misma razón. No tenemos que preocuparnos en si tal actuación podría haber sido perjudicial a un acusado bajo otras circunstancias. Aquí la defensa de exposición anterior fué resuelta claramente en contra del acusado, como cuestión de derecho, en virtud del caso de *Carbonell*. Por tanto el acusado no sufrió daño perjudicial alguno cuando la corte inferior se negó a permitirle que renovara dicha alegación en presencia del jurado, que ya había sido desestimada como cuestión de derecho. Véanse *Pueblo* v. *Felicié,* 31 D.P.R. 513; *Pueblo* v. *Rivera,* 67 D.P.R. 280, 285.

 Durante el juicio el taquígrafo-repórter de la corte se enfermó y no pudo seguir actuando. Fué sustituído por un taquígrafo que envió el Departamento de Justicia. El acusado se opuso por el fundamento de que la sustitución no se hizo ''dentro de ley''. Señala como su error 18vo. la resolución de la corte inferior desestimando su objeción.

En su alegato el apelante especifica mejor la base de su objeción. Alega que la sección 2 de la Ley núm. 57, Leyes de Puerto Rico, 1930 (pág. 415), crea el cargo de taquígrafo-repórter de la Corte de Distrito de Bayamón, disponiendo que será nombrado por el Gobernador y confirmado por el Senado, y que toda vez que el taquígrafo sustituto no había sido nombrado por el Gobernador, aquél no podía actuar legalmente en esa capacidad.

Aparte del hecho de que el acusado no expuso específicamente el fundamento de su objeción durante el juicio, no podemos convenir en que la Asamblea Legislativa tuvo en mente dejar que se paralizara la maquinaria de la corte de distrito si se enfermaba un taquígrafo durante la celebración de un juicio. Creemos que tal empleado puede ser substituído temporalmente por un sustituto idóneo quien no tiene necesariamente que ser nombrado por el Gobernador. En ausencia de prueba al efecto de que dicho sustituto no era idóneo y de que el acusado fué perjudicado, no podemos resolver que la aceptación por la corte de un taquígrafo sustituto enviado por el Departamento de Justicia constituyó un error que da lugar a la revocación.

El error 19no. es que la corte manifestó en presencia del jurado que los abogados del acusado estaban exponiendo sus objeciones en forma tal que le decían a los testigos lo que debían declarar. En su alegato el acusado no cita lenguaje alguno de la corte ni trae a nuestra atención ningún lugar específico del récord. Eso por sí solo basta para resolver este error. *Pueblo v. Benítez,* 47 D.P.R. 78.

Sin embargo, examinaremos esta cuestión, suponiendo que el acusado se refiere al siguiente incidente: "Lic. Ramos Antonini: Para oponernos, Sr. Juez. Esa pregunta está ya contestada en el sentido de que él nunca le daba a ella explicación alguna sobre eso.—Fiscal: Deje el compañero que la testigo lo diga.—Juez: Sí. Su Señoría hace una objeción en tal forma que le dice a la testigo lo que ha de contestar. Ya lo ha hecho el otro abogado . . .—Lic. Ramos Antonini: Respetamos la insinuación de V. H.—Juez: El compañero me perdona. Esa no es la objeción legal a una pregunta. Se objeta una pregunta por no ser pertinente, porque no sea objeto del examen directo, o de prueba, o por alguna de las razones que señala la ley, pero al objetarse no debe recordarse que el testigo ha declarado en tal sentido porque eso sería recordarle al testigo indirectamente lo que tenga que contestar.—Lic. Ramos Antonini: Como cuestión de derecho,

eso que dice V. H. Pero V. H. sabe que uno de los motivos de objeción que da la ley es la repetición innecesaria de preguntas.—Juez: Esa pregunta fué hecha una sola vez y hace rato.—Lic. S. R. Quiñones: Me perdona V. H. pero, apelamos al récord, la misma pregunta, en otras formas, se ha hecho en varias ocasiones y ha sido contestada. Además . . . —Juez: La Corte va a trazar una regla. Cuando se haga una objeción, uno solo de los abogados debe intervenir, a menos que surja una cuestión de derecho en que se da oportunidad a los dos abogados.—Lic. S. R. Quiñones: En este caso la intervención mía se ha basado en una manifestación del Sr. Juez, que este abogado no puede permitir sea hecha, en el sentido de que este abogado ha declarado por los testigos. Este abogado entiende que no lo ha hecho ni ha sido esa su intención.—Juez: La Corte fué clara hace un momento cuando habló. Los señores Jurados deben atenerse únicamente a la prueba, sin considerar para resolver este caso los comentarios de las partes sobre lo declarado por los testigos; y las palabras del Juez no deben entenderse como dichas en el sentido de que ustedes deban creer en una forma u otra a los testigos. Ustedes son los únicos jueces de la veracidad de los testigos. Puede continuar el fiscal.—Defensa: Excepción.''

Quizá el acusado estuvo justificado en oponerse a la pregunta por el fundamento de que ya había sido ésta contestada en forma adecuada. Véanse *Pueblo* v. *Munera*, 39 D.P.R. 295, 301-3; *Pueblo* v. *Cardona*, 57 D.P.R. 695. Sin embargo, nada erróneo vemos en la actuación de la corte al indicar que al hacer sus objeciones el acusado no debía sugerirle la contestación a los testigos, en caso de que la corte declarara sin lugar la objeción y permitiera contestar al testigo. Además, la corte subsanó cualquier posible error dando fin al incidente con una advertencia al jurado de que ellos eran los únicos jueces de la veracidad de los testigos y de que las manifestaciones de los abogados y de la corte no debían afectarlos en ese aspecto.

El 20mo. error se refiere a la actuación de la corte de distrito al no permitirle al acusado hacerle una pregunta a Guillermo Collazo, uno de sus testigos. Collazo era el patrono de Jesús Díaz, anterior testigo del acusado. Este trataba de demostrar por medio de Collazo que Díaz estaba familiarizado con el sitio donde ocurrió el supuesto crimen en Corozal porque Díaz era el chófer de Collazo en dicho pueblo. La corte le permitió al acusado interrogar a Collazo sobre esta cuestión en el interrogatorio directo. Después del contrainterrogatorio del fiscal, el abogado del acusado le preguntó: "¿Dónde tomaba la gasolina usted para esa fecha?—Hon. Juez: ¿Qué, vamos a repetir el caso ahora? La Corte no lo permite.—Defensa: Excepción."

Arguye el acusado que esta pregunta era introductoria con el fin de dejar establecido que Díaz compró gasolina cerca del sitio donde ocurrieron los hechos en este caso. Aparte del hecho de que el acusado no ofreció a la corte tal explicación en cuanto al propósito de esta pregunta aparentemente impertinente, ya la corte había permitido el examen directo del testigo en cuanto al conocimiento de Díaz de las calles de Corozal. En uso de su discreción podía negarse a permitirle al acusado volver sobre esta cuestión en el interrogatorio redirecto. *Pueblo* v. *Gómez,* 45 D.P.R. 812; *Pueblo* v. *Munera,* supra; *Pueblo* v. *Aponte,* 26 D.P.R. 604.

El error 21ro. trata de la alegada actuación de la corte de distrito al no permitirle al abogado del acusado negar que hubiera hecho ciertas manifestaciones que según él el fiscal le atribuyó en su informe al jurado y al declarar sin lugar una moción de *mistrial* por tal motivo.

El récord demuestra que mientras el fiscal exponía su argumento final, ocurrió lo siguiente: "Lic. Ramos Antonini: Con el permiso del tribunal. Queremos hacer constar que el fiscal está entrando en cosas que yo no he dicho. Yo no le he dicho al jurado que éste sea un caso de homicidio.—Fiscal: ¿Se va a argumentar de nuevo por la defensa ante

el jurado?—Juez: La defensa puede hacer objeción a cualquier argumentación del fiscal para la cual no tenga base o que se refiera a cosas exteriores a la prueba. Su Señoría puede oponerse a eso y la Corte le dará la razón si la tiene, pero si se va a refutar un argumento con otro, lá Corte no lo permite.—Lic. Ramos Antonini: Para que conste en récord nuestra objeción a las manifestaciones del fiscal, si me permite Su Señoría: El fiscal atribuía a este abogado haber hecho una manifestación según la cual yo concedía (según esa argumentación del fiscal) que no se trataba de un caso de asesinato sino de un caso de homicidio, y le atribuía a este abogado haber hecho esa manifestación categórica en ese sentido. Como quiera que los taquígrafos, incluso los de esta corte, no toman taquigráficamente los informes del fiscal ni de los abogados, contrario a lo que la ley manda, que incluye el que el taquígrafo debe tomarlos, quiero hacer constar que el fiscal estaba haciendo esa manifestación al jurado, imputándome a mí una concesión que yo no hice, y que me he levantado a informar al tribunal que yo no hice esa manifestación en ningún momento y la Corte no lo ha permitido.—Juez: la Corte lo que ha dicho es que Su Señoría no puede hacer un argumento en el momento que está hablando el fiscal. Puede seguir hablando el fiscal.—Lic. Ramos Antonini: Por lo tanto tomamos excepción de la manifestación de la Corte y solicitamos en este momento se declare un 'mistrial' toda vez que la Corte no ha permitido a este abogado negar algo que no ha dicho y que de creerlo el jurado, por falta de memoria, puede significar una condena contra el acusado de homicidio.—Juez: Su Señoría no puede utilizar el tiempo que le corresponde al fiscal para argumentar ante el jurado. El jurado va a resolver este caso de acuerdo con la prueba, no con los argumentos de Su Señoría.—Lic. Ramos Antonini: Ni del fiscal.—Juez: Ni del fiscal tampoco.''

El argumento del acusado está basado en una premisa falsa. Alega que la corte inferior no le permitió negar que

él había admitido que la prueba estableció un caso de homicidio. Pero surge del récord que durante el argumento final del fiscal el abogado se levantó y negó dos veces que hubiera hecho tal manifestación. Es difícil imaginarse qué más esperaba el acusado que la corte hiciera. Ciertamente la corte estuvo correcta al decir que el acusado no podía argumentar su caso en dicho momento. Competía al jurado determinar los hechos y emitir un veredicto después de oír toda la prueba y los informes de ambas partes. Y la corte correctamente hizo constar, que el veredicto se basaría en la prueba y no en los informes. Véanse *Pueblo* v. *Rivera*, 64 D.P.R. 652; *Pueblo* v. *Colón*, 65 D.P.R. 760.

▉ Creemos propio discutir conjuntamente los errores 23ro., 24to. y 25to. El 23ro. se basa en la actuación de la corte de distrito al no declarar nulo el veredicto por el fundamento de que el márshal se había comunicado con el jurado en ausencia del acusado. Los errores 24to. y 25to. dicen que la corte erró al dejar que el jurado permaneciera en el local de la corte durante toda una noche, sin oportunidad alguna de reposo y tras cinco días de trabajo continuo.

Estos tres errores se basan en una discusión sostenida por la corte y el abogado del acusado, después que el jurado rindió el veredicto declarándolo culpable de homicidio voluntario. La discusión fué como sigue: "Lic. S. R. Quiñones: Señor Juez: En este caso, que comenzó el jueves de la semana pasada y que ha continuado sin interrupción hasta el día de hoy, incluyendo trabajar el sábado, en que generalmente no trabajan los tribunales, ha ocurrido algo que la defensa debe anotar, tanto como protesta a la actuación del tribunal como en calidad de excepción a esa actuación. Anoche, después de un día de trabajo arduo, continuo, sin interrupción, el jurado se encargó del caso por haberle sido sometido por las partes y sobre la base de haber el Señor Juez dado sus instrucciones, a eso de las diez y media de la noche. Al jurado, según la información que tiene la defensa, no se le había proporcionado la oportunidad de

recogerse a descansar en algún hotel de la localidad o de San Juan, a pesar de haber estado trabajando sin interrupción desde las ocho y media hasta las diez y media de la noche. Tampoco, según información que tiene la defensa, se le proporcionó al jurado medios de siquiera dentro del local de la corte poder tener algunas horas de reposo después de tan ardua labor. No hay en este tribunal un 'couch', un diván, una butaca siquiera que tenga un almohadón donde los señores jurados pudieran reposar antes de entrar a deliberar en un caso de esta naturaleza.—Juez: ¿Y eso en qué afecta el veredicto?—Lic. S. R. Quiñones: Una cama propia para el descanso de una persona que ha estado trabajando catorce horas sin descanso. Nosotros sostenemos que en esta situación, anoche no hubo deliberación de un jurado porque no es posible, físicamente, que haya habido deliberación de un jurado. Sostenemos que si ha habido veredicto ha sido producto de la situación de cansancio en que estaba el jurado, y solicitamos se declare nulo el veredicto del jurado.—Hon. Juez: Llámese a los Señores Jurados. (La mayor parte de los jurados se habían ya marchado de la corte). Según trajo un veredicto condenatorio contra el acusado, pudiera haberlo absuelto. *Anoche el jurado informó a la Corte, a través del márshal, que querían quedarse deliberando. Y Su Señoría estaba delante cuando el márshal me dijo que ellos manifestaban que querían quedarse deliberando.*—Lic. S. R. Quiñones: Quiero informarle a V. H. que este abogado no estaba presente.—Juez: El Lic. Ramos Antonini o Fournier.—Lic. S. R. Quiñones: ¿El compañero Fournier estaba presente cuando eso?—Lic. Fournier: No recuerdo.—Lic. S. R. Quiñones: Queremos indicar, además, al señor Juez, con la venia de la Corte, que este abogado se retiró de la corte a eso de las doce y media o una de la madrugada de hoy, y que a esa hora el jurado, fué lo que se le informó a este abogado, estaba deliberando. Este abogado llegó a primeras horas de la mañana a esta corte.—Juez: La corte cree, cree no, está segura, que *el jurado le mandó a decir con el márshal que*

*querían continuar deliberando donde estaban. La Corte los dejó ahí por eso.* La Corte quiere hacer constar, además, que si hubiera habido necesidad de conseguir un hotel, no hubiera sido posible conseguirlo porque se llamó a todos los hoteles de San Juan y ninguno tenía cabida para un jurado y aquí menos se consiguió. Según el jurado pudo haber traído un veredicto condenatorio, pudo haber traído uno absolutorio. La Corte cree que el veredicto ha sido la libre expresión del jurado de condenar al acusado de Homicidio Voluntario. Pudo haber traído un veredicto de asesinato en primero o segundo grado o haberlo absuelto y lo que hizo fué traer uno igual que en el juicio anterior. Sin lugar.—Lic. S. R. Quiñones: Excepción.'' (Bastardillas nuestras).

El lenguaje de la corte debe leerse en su totalidad. Al manifestar que el jurado le había informado a través del márshal que ellos deseaban continuar deliberando en el local donde estaban y que la corte por este motivo los había dejado allí, la corte se refería al argumento del abogado del acusado al efecto de que no había habido deliberación por parte del jurado debido a las condiciones físicas bajo las cuales se le obligó a trabajar. En su consecuencia es obvio que la comunicación del jurado a la corte—para nuestros fines es irrelevante si fué originada por el jurado o en respuesta a una pregunta de la corte o del márshal—se refería a la comodidad del jurado. Por tanto no hubo comunicación entre la corte y el jurado de la clase prohibida por el caso de *Pueblo v. Saldaña,* 66 D. P. R. 189.

Esta comunicación no se parece a la del caso de *Saldaña* donde el jurado le envió una comunicación a la corte a través del márshal al efecto de que deseaba regresar al salón de la corte ya que no podía ponerse de acuerdo, y la corte instruyó al jurado a través del márshal que continuase deliberando. Esta fué una comunicación de la corte al jurado respecto del caso propiamente dicho fuera del salón de la

corte y en ausencia del abogado de la defensa. Pero aquí la comunicación consistió en que los miembros del jurado informaron que estaban lo suficientemente cómodos para continuar deliberando en el sitio donde se hallaban. Según indicamos a la pág. 191, nota 2, del caso de *Saldaña,* la regla que prohibe tales comunicaciones "no es aplicable a aquellas comunicaciones ajenas al caso que sean necesarias para atender las necesidades del jurado, como aquéllas que tengan que ver con el alojamiento y la alimentación del jurado . . . ''.

▮ Los errores 24to. y 25to. requieren poca consideración. Los preparativos físicos para la comodidad del jurado durante sus deliberaciones caen dentro de la discreción de la corte de distrito. Véase el art. 273 del Código de Enjuiciamiento Criminal. Las manifestaciones del abogado del acusado y de la corte que hemos citado demuestran que no hubo abuso de discreción, y que la queja del acusado es una idea tardía al serle contrario el veredicto.

El error 26to. es que el veredicto es contrario a derecho y a la prueba. Argumentando este error el acusado meramente sintetiza algunos de los errores ya discutidos. Hemos examinado el récord y encontramos que hay prueba que justifica ampliamente el veredicto rendido por el jurado.

*La sentencia de la corte de distrito será confirmada.*