EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MATÍAS ORTIZ GONZÁLEZ, acusado y apelante.

Núm. 9921.—*Sometido:* Junio 9, 1943. *Resuelto:* Junio 18, 1943.

*Víctor M. Marchán,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El apelante fué convicto de un delito de asesinato en segundo grado y sentenciado a la pena de catorce años de presidio con trabajos forzados. Contra esa sentencia interpuso el presente recurso. La evidencia fué contradictoria. La del fiscal tendió a probar que el interfecto Florencio Ocasio Hernández en la noche del 30 de noviembre de 1940 se hallaba en un rosario cantado que se celebraba en la casa de Catalina Delgado, en la urbanización St. Just, barrio de Las Cuevas, término municipal de Trujillo Alto. Que como a las diez de la noche el apelante entró en dicha casa y acercándose al interfecto, lo tocó por el hombro, invitándolo a que saliera, porque tenía que hablar con él. El interfecto accedió, siguiéndolo, pero al poco rato una señora que se dirigía al rosario, al llegar dijo que en el camino había oído un murmullo y poco después tres disparos que le pareció procedían de una rehoya cerca de aquel sitio. Dos ó tres de los hombres que se hallaban en la casa salieron hacia el sitio indicado por la mujer y antes de llegar a la rehoya vieron subir al interfecto, manifestándoles éste que acababa de ser herido por el apelante. Conducido al hospital, falleció poco después a consecuencia de las heridas recibidas. Uno de los testigos del fiscal, Gregorio Caraballo, declaró sin objeción por parte de la defensa que unas semanas antes del suceso, el acusado, hablando con él en el campo, le había dicho que en aquel barrio solamente había tenido disgustos con uno de los Félix, refiriéndose probablemente al interfecto, quien se declaró era conocido con el nombre de Florencio Félix; que lo quería coger en un sitio de hombre a hombre, donde el interfecto pudiese matarlo a él o si él mataba al interfecto que nadie lo supiera.

La del apelante fué al efecto de que el día de autos salió de su trabajo como a las cuatro de la tarde y en vez de venir a su casa se fué a una reunión de carpinteros que se llevaba a efecto en Carolina. Que al regresar de Carolina como

a las nueve de la noche, en la casa de la urbanización frente a la cual lo dejó el automóvil, se celebraba una jugada de dados y fué invitado para tomar parte en ella. Que cuando el acusado le había ganado al interfecto unos $2.50, éste trató de apoderarse del dinero y al impedírselo el acusado, el interfecto le hizo ciertas amenazas. Poco más tarde la misma noche el interfecto se dirigió a la casa del acusado, invitándolo a que saliera a fin de hablar con él. Salió el acusado, pero antes cogió un revólver que tenía en su casa, y luego de llegar a cierto sitio, el interfecto, con un arma que llevaba y que el acusado no pudo precisar, le dió un golpe que le hizo perder el conocimiento, derribándolo, y una vez en el suelo el acusado, el interfecto se fué encima de él, agrediéndole repetidas veces. Declaró además el acusado que el interfecto le dió dos mordidas, una en el vientre y otra en un muslo, y que además recibió otros golpes, pero no se presentó evidencia alguna de que algún médico hubiese visto o curado tales heridas. Que cuando el acusado se vió virtualmente dominado por el interfecto, quien continuaba agrediéndolo, sacó el revólver que portaba en el bolsillo de atrás del pantalón y logró hacerle tres disparos, de esa forma consiguiendo desasirse del interfecto. Una vez hechos los disparos, el acusado se dirigió a su casa y se acostó a dormir, siendo más tarde arrestado por la policía.

Se queja el apelante de que la corte admitiera en evidencia la declaración del testigo Gregorio Caraballo sobre las manifestaciones que le hiciera el acusado semanas antes del crimen. Como dijéramos anteriormente, la defensa no tomó excepción ni siquiera objetó a la admisión de esa prueba, y esa circunstancia bastaría para no considerar el error señalado; pero aunque se hubiera tomado excepción oportunamente, la prueba era admisible para demostrar el móvil y la premeditación. El hecho de que transcurrieron varias semanas entre la fecha en que se hizo la manifestación y aquélla en que ocurrió el delito no es un tiempo tan remoto que pueda afectar la admisibilidad de la

evidencia. Admitida ésta, su apreciación corresponde al jurado a los efectos del crédito que deba dársele. La circunstancia de que el acusado, al hacer la manifestación que se le imputa, no precisara con exactitud la persona a que se estaba refiriendo, no afecta la admisibilidad de la evidencia. Según el testigo Caraballo, el acusado dijo que la persona a que se refería era uno de los Félix, y el fiscal demostró que el interfecto era conocido por Florencio Félix y que a sus hermanos los llamaban "los Félix". Incumbía igualmente al jurado apreciar esta prueba y, de creerla cierta, determinar, de acuerdo con todas las circunstancias, si en efecto la persona a que se refería era o no el interfecto.

■■ Tampoco erró la corte inferior al trasmitir al jurado instrucciones sobre asesinato en segundo grado. La acusación se formuló por asesinato. El delito de asesinato es uno solo. *People* v. *Haun*, 44 Cal. 96, 97. Como a veces median circunstancias en el asesinato demostrativas de una diferencia en el grado de maldad por parte del acusado, el Código ha tenido a bien dividir el delito en dos grados, a saber: asesinato en primer grado y asesinato en segundo grado, castigando el primero con pena única de reclusión perpetua y el segundo con pena de presidio no menor de diez años ni mayor de treinta. Siendo el asesinato un solo delito, dentro de una acusación por dicho delito procede dar instrucciones con respecto a sus dos grados. Además, el artículo 247 del Código de Enjuiciamiento Criminal dispone lo siguiente:

"Artículo 247.—En los juicios por asesinato, una vez probado que la muerte ha sido consumada por el acusado, será de la incumbencia de éste el probar que han mediado las circunstancias atenuantes o que excusen o justifiquen el hecho, a menos que la prueba aducida por la acusación tienda a demostrar que el crimen cometido sólo reviste carácter de homicidio o que el acusado tenía justificación o excusa."

En el presente caso el acusado fué juzgado por un delito de asesinato. Se probó que la muerte fué consumada por el

acusado y de la prueba del fiscal no aparece circunstancia alguna que justifique la reducción del delito a homicidio voluntario. Siendo ello así, aparte de lo antes dicho, el juez tenía base suficiente para dictar instrucciones por el delito de asesinato en segundo grado.

■ Sostiene la defensa que asumiendo la certeza de toda la prueba que tuvo ante sí el jurado, dicha prueba es compatible con otro veredicto que no sea asesinato en segundo grado. Aceptando que toda la prueba que tuvo ante sí el jurado fuera compatible con otro veredicto que no sea asesinato en segundo grado, ello no implica que no puedan darse instrucciones sobre este último delito si es que la prueba, como en este caso, lo justifica, pudiendo también darse instrucciones sobre esos otros delitos, como suponemos las dió la corte, sin que podamos asegurarlo, toda vez que en el récord no aparecen las instrucciones al jurado.

■ Por último, alega el apelante que la corte inferior erró al denegar la moción de nuevo juicio. Carecemos de jurisdicción para considerar ese alegado error, toda vez que el acusado no interpuso apelación contra la resolución denegando su moción de nuevo juicio.

No apareciendo de los autos que se cometiera algún error fundamental susceptible de producir la revocación de la sentencia, *procede desestimar el recurso y confirmar la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.