EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PORFIRIO COLÓN APONTE, acusado y apelante.

Núm. 11014.—*Sometido:* Diciembre 11, 1945. *Resuelto:* Febrero 28, 1946.

*Juan B. Soto,* abogado del apelante; *Hon. Procurador General E. Campos del Toro, Luis Negrón Fernández, Procurador General Auxiliar,* y *J. Rivera Barreras,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Esta es la segunda vez que este caso viene a nuestra consideración. En la primera revocamos la sentencia por asesinato en segundo grado dictada contra el apelante, por haberse demostrado que fué privado de un derecho fundamental al no tomarse taquigráficamente las instrucciones de la corte al jurado. *Pueblo* v. *Colón,* 63 D.P.R. 385. Devuelto el caso a la corte inferior y celebrado un nuevo juicio, el acusado fué convicto por el jurado de un delito de homicidio voluntario y sentenciado a extinguir ocho años de prisión con trabajos forzados. Es esta la sentencia cuya revisión pende ante nos.

La naturaleza de los errores señalados exige que en la exposición de los hechos hagamos referencia a cierto incidente ocurrido al iniciarse el primer juicio en la corte inferior.

La acusación presentada en este caso imputa al acusado un delito de asesinato. Al iniciarse la vista del primer juicio el fiscal anunció a la corte que iba a sostener la acusación como si se tratase de un delito de asesinato en segundo grado. El jurado, como hemos indicado, trajo un veredicto de asesinato en segundo grado y aceptado por la corte aquel veredicto, se impuso la sentencia correspondiente. En el nuevo juicio, al llamarse a la vista del caso, el fiscal, bajo la misma acusación, anunció que el caso se seguiría por asesinato en primer grado y así se hizo, habiendo el acusado gozado del derecho a las recusaciones perentorias correspondientes a un caso de asesinato en primer grado. Esta vez el jurado, como hemos visto, trajo un veredicto de homicidio voluntario.

Expondremos en primer término los hechos del caso y discutiremos luego los errores señalados.

La evidencia del fiscal tiende a probar que en la noche del 19 de julio de 1942 el acusado, quien entonces era un

policía insular, persiguió a dos individuos con el propósito de arrestarlos. Estos se detuvieron y el acusado dió una bofetada a uno de ellos. Huyeron entonces los dos individuos corriendo por las calles 9 y 10 del Barrio Obrero y mientras el acusado iba tras ellos, les hizo dos o tres disparos con su revólver, uno de los cuales causó la muerte a Pastor Cortray Avilés, quien a la sazón se hallaba hablando con su esposa y otros vecinos frente a la casa de Pedro Altiery.

La evidencia del acusado tiende a probar que el día de autos prestaba servicios como policía en el Barrio Obrero y que sus superiores le habían asignado la persecución de cierta pandilla de ladrones que en aquellos días estaban cometiendo hurtos y escalamientos en el Barrio Obrero; que esa noche vió dos individuos que caminaban delante de él en la misma dirección pronunciando en alta voz palabras obscenas y al acercárseles observó que estos dos individuos correspondían a las señas de los que, según una confidencia que le habían dado, pertenecían a la pandilla antes mencionada; que al tratar de arrestarlos fué atacado por ellos, pero él se defendió y entonces se dieron a la fuga corriendo el acusado tras ellos; que para amedrentarlos a fin de que se detuvieran, hizo dos disparos al aire; que los individuos continuaron su fuga no pudiendo alcanzarlos y que no se enteró hasta el día siguiente que había herido al interfecto.

I

El apelante concede una gran importancia al error que señala consistente en que no obstante su oposición, la corte inferior permitió que el Fiscal, en el segundo juicio, considerase la acusación como de asesinato en primer grado cuando en el juicio anterior había reducido la calificación a asesinato en segundo grado.

Ya hemos resuelto que el asesinato constituye un solo delito que se divide en dos grados en atención a la perver-

sidad demostrada por el acusado y al solo efecto de la imposición de la pena. *Pueblo* v. *Ortiz,* 62 D.P.R. 258, 261; 1 Warren *on Homicide,* 354. El hecho de que por razones que no aparecen del récord el fiscal en el caso anterior optase por seguir el proceso por asesinato en segundo grado, no confirió al acusado ningún derecho adquirido a que en el segundo juicio se le hiciese la misma concesión. La acusación por asesinato presentada en este caso comprende ambos grados del delito y el acusado puede legalmente ser convicto del delito en el grado que justifique la evidencia. *People* v. *Ung Ting Bow,* 142 Cal. 341, 75 P. 899.

Pero aparte de estas consideraciones, el récord demuestra que el apelante no sufrió perjuicio alguno por haberse seguido el caso por asesinato en primer grado, pues en el juicio anterior fué convicto de asesinato en segundo grado y en el segundo, en que el proceso fué por asesinato en primer grado, el jurado trajo un veredicto de homicidio voluntario.

## II

Se queja el apelante de que mientras su abogado argumentaba el caso al jurado trató de leerles la ley que a su juicio era aplicable al caso y que habiéndose opuesto el fiscal, la corte invocando el art. 233, inciso 5 del Código de Enjuiciamiento Criminal ([1]) sostuvo la objeción. En verdad, ese precepto legal no prohibe la lectura de libros de Derecho al jurado, pero tampoco concede tal derecho. No es de esperarse que en su informe al jurado el fiscal y la defensa se limiten a exponer escuetamente los hechos y hacer cualquier inferencia que lógicamente surja de los mismos. Por lo general es necesario referirse a la ley aplicable al caso para argumentar ante el jurado si la evidencia presentada

([1]) El inciso 5 del art. 233, dice así:

"Las partes podrán entonces, respectivamente, presentar sólo prueba en refutación (*rebutting testimony*) de (las) originalmente aducidas, a menos que la corte, por razones que estimare buenas y en pro de la justicia, les permitiere ofrecer evidencia sobre el caso original."

es suficiente para probar la culpabilidad del acusado. Siempre que la exposición de la ley sea correcta y no tienda a confundir al jurado, el argumentar sobre la ley aplicable lo permite aquella parte del art. 233 dispositiva de que el fiscal, en su discurso de rectificación, debe limitarse a impugnar la argumentación de la defensa "y a rectificar cualquiera información errónea de hecho o de derecho . . .". Esto no implica, sin embargo, que el fiscal o la defensa tengan derecho a leerle al jurado lo que ellos entiendan que es la ley aplicable al caso. Desde que se resolvió el caso de *El Pueblo* v. *Salinas*, 9 D.P.R. 371, 375, se estableció en esta jurisdicción la regla de que los abogados no tienen derecho a leer al jurado libros de leyes.

En el caso de *People* v. *Onessimo*, 224 Pac. 101, 102 (Cal. 1924), se dijo por la corte que por regla general la práctica de permitir a los abogados leer la ley al jurado, no es buena y no debe ser tolerada, puesto que el resultado por lo general, es confundir, más bien que ilustrar, al jurado.

Opinamos, pues, que la corte inferior actuó correctamente al no permitir tal lectura.

### III

La defensa imputa error a la corte inferior por haberse negado a trasmitir al jurado las instrucciones especiales que solicitó marcadas 2 y 5, las cuales dicen así:

"2. El Fiscal necesita probar que el acusado acometió y agredió con un revólver a Pastor Cortray Avilés el 19 de julio de 1942 en Santurce, Puerto Rico."

"5. El Fiscal necesita probar que el acusado actuó con la intención criminal y propósito firme y deliberado de matar a Pastor Cortray Avilés."

Es verdad que la acusación en este caso imputó al apelante que allá por el día 19 de julio de 1942 y en Santurce, Puerto Rico, "allí y entonces, de una manera ilegal y voluntaria, con malicia premeditada y expresa y firme y deliberado propósito de matar y demostrando tener un corazón pervertido y ma-

ligno, dió muerte ilegal al ser humano Pastor Cortray Avilés, al cual acometió y agredió, con un revólver, que es un arma mortífera, infiriéndole una herida de bala, de carácter grave, y a consecuencia de dicha herida de bala recibida, falleció el mencionado Pastor Cortray Avilés el día 21 de julio de 1942 y que dicha herida fué inferida por el acusado Porfirio Colón Aponte, al hoy interfecto Pastor Cortray Avilés, con la intención de matarlo''.

Pero es doctrina de Derecho Penal universalmente aceptada que toda persona intenta y es responsable de la consecuencia natural de sus actos. En su consecuencia, cuando *A,* al tratar de realizar un acto criminal contra *B* hiere o priva de la vida a *C, A* es responsable del daño causado a *C* como si en realidad hubiere tenido la intención criminal de realizar el acto contra *C.* *Pueblo* v. *Estrella,* 42 D.P.R. 342; *Pueblo* v. *Cabán,* 45 D.P.R. 217; *Pueblo* v. *Cartagena,* 54 D.P.R. 870.

La prueba de la defensa tendió a demostrar que si bien los disparos fueron hechos para amedrentar a los individuos que huían del policía, uno de los disparos alcanzó a Pastor Cortray Avilés, causándole la muerte dos días después. Ya hemos resuelto que no existe incongruencia fatal entre la acusación y la prueba en estas circunstancias y que la forma que aquí adoptó el fiscal para la acusación es la correcta, pues ésta debe alegar que el acometimiento se hizo a la persona agredida tal y como si en todos respectos ella hubiera sido la persona contra quien se hubiere intentado la agresión. *Pueblo* v. *Cartagena,* supra, pág. 877. Pretender que la corte instruyera al jurado que el fiscal necesitaba probar que el acusado acometió y agredió a Pastor Cortray Avilés con intención criminal y propósito firme y deliberado de matarlo, equivale a ignorar la doctrina de la intención implícita (*Constructive Intent*) a que acabamos de referirnos.

## IV

 Señala como error el apelante el haberse negado la corte a trasmitir las instrucciones especiales marcadas 10 y 11 que dicen así:

"10. Si el Jurado encuentra que de la prueba resulta que el acusado, siendo un Policía Insular, trató de arrestar a dos individuos que en ese momento, en su presencia y en la calle hacían uso de lenguaje grosero, profano o indecoroso en presencia o al alcance del oído de mujeres o niños, y que al tratar de efectuar dicho arresto los dichos individuos huyeron y el acusado usando del cuidado ordinario y acostumbrada precaución, disparó al aire para intimidarlos, resultando herido Pastor Cortray Avilés, él realizó un acto legal por medios legales, y el Jurado debe absolverlo."

"11. Si el Jurado encuentra que de la prueba resulta que el acusado, siendo un Policía Insular, trató de arrestar a dos individuos de quienes se le informó que eran los autores de un escalamiento ocurrido la noche anterior o alrededor de esa fecha en el sitio denominado Barrio Obrero, y que al tratar de arrestarlos, dichos individuos ofrecieron resistencia y huyeron, y el acusado los siguió y para vencer su resistencia, usando del cuidado ordinario y acostumbrada precaución, hizo varios disparos al aire, como consecuencia de los cuales fué herido el interfecto Pastor Cortray Avilés, el Jurado debe absolver al acusado, por haber éste actuado en el cumplimiento de sus funciones legítimas."

Resultando de la declaración del acusado que el delito que en su presencia cometieron los dos individuos desconocidos era un *misdemeanor,* y que ellos de acuerdo con toda la prueba no apelaron a la violencia para impedir su arresto, puesto que huían, por lo cual no puede alegarse que el acusado, al hacer los disparos al aire como él declara, actuara en defensa propia, tenemos que concluir que no estuvo justificado el hacer tales disparos, aunque fuera al aire, especialmente si se tiene en cuenta que el sitio de los sucesos es una sección urbana donde se corría el riesgo de herir a cualquiera otra persona, como en efecto sucedió. *Pueblo* v. *López Vélez,* 36 D.P.R. 586; Monografía en 3 A.L.R. 1173; *People* v. *Lathrop,* 192 P. 722 (Cal. 1920). Actuó correctamente la corte inferior al denegar la instrucción especial núm. 10.

Tampoco erró la corte al negarse a trasmitir la instrucción especial número 11. La ley que regula esta materia es el art. 208 del Código Penal, que en lo pertinente, dice así:

"Será justificable el homicidio cuando fuere cometido por funcionarios públicos y los que por orden de éstos estuvieren prestándoles su auxilio, en los casos siguientes:

"1. . . . . . . .

"2. . . . . . . .

"3. Cuando por necesidad se cometiere al efectuar la captura de criminales socorridos [rescatados] o escapados, o al arrestar a reos de delito grave (felony) que se hallaren prófugos u ofrecieren resistencia al intentar su prisión."

Como fácilmente se verá, los hechos de este caso no están comprendidos dentro del inciso 3 del artículo arriba transcrito, pues el acusado no estaba tratando de capturar criminales rescatados o escapados ni a ninguna persona reo de delito grave felony que se hallare· prófugo u ofreciera resistencia al intentar su prisión, sino simplemente personas de quienes el acusado sospechaba por confidencias que decía tener, que eran autores de ciertos hurtos y escalamientos, sin que del récord aparezca siquiera que dichos supuestos delitos fueron felonies.

## V

▆▆▆▆ Finalmente la defensa arguye que debe revocarse la sentencia por ciertas manifestaciones del fiscal al jurado, a las que nos referiremos inmediatamente, las cuales se alega, no están sostenidas por la prueba.

(a) Comentando el fiscal el informe de la defensa en su discurso de rectificación, dijo que el acusado sacó el revólver y "le entró a tiros a aquellos dos individuos".

Protestó la defensa y la corte sostuvo al fiscal diciendo:

"La Corte: La corte hace constar en el récord que la testigo, Herminia Meléndez, a preguntas de la defensa, dijo que ella vió cuando el acusado hizo un segundo disparo a una persona que corría delante de él. De suerte que la corte permite que el Fiscal continúe argumentando en la forma que lo estaba haciendo."

Del récord resulta que la aseveración de la corte está sostenida por la declaración de la testigo Herminia Melén-

dez y consecuentemente no hubo error al permitir que el fiscal hiciese tal manifestación.

(b) También se queja la defensa que mientras el fiscal argumentaba el caso ante el jurado, manifestó que en este juicio el acusado había admitido que disparó mientras que, en el juicio anterior, negó que hubiera disparado.

La Corte sostuvo la objeción de la defensa manifestando:

"LA CORTE: La corte quiere aclarar las manifestaciones hechas por el Fiscal en cuanto a eso. El acusado declaró en la silla de testigos y dijo que en el juicio anterior, en septiembre, al preguntársele si había disparado, dijo que no, se le preguntó si él había disparado entre nueve y nueve y media de la noche, y a esa hora él estaba en otro sitio distinto al sitio en que ocurrieron los disparos. Entonces admite hoy que entre las diez y 10:20 de la noche del 19 de julio él hizo los disparos al aire en la Calle 10 y Corta del Barrio Obrero de Santurce."

"LA CORTE: La corte sostuvo la objeción de la defensa porque el Fiscal está argumentando a base de hechos que no fueron probados."

"LA CORTE: Este señor nunca negó, que yo oyera, en la silla de los testigos, él nunca negó que él hubiera disparado porque la pregunta que se le hacía y le leyó su abogado del récord, era si él había disparado entre nueve y nueve y media de la noche, porque él decía que no porque él no estaba allí."

"LA CORTE: Su Señoría acaba de decir ahora y vienen las palabras objetadas, que este acusado dijo en el otro juicio que nunca había disparado. Él dijo que nunca había disparado entre nueve y nueve y media de la noche. La corte sostiene la objeción y le ordena al Fiscal que no siga argumentando en ese sentido."

Si bien es verdad que no aparece del record que la corte instruyera al jurado que no tomase en cuenta las manifestaciones del fiscal, lo cual es la mejor práctica, considerando la repudiación que en presencia del jurado hiciera la corte a lo dicho por el fiscal, y aclarado por la corte misma lo que había sucedido de acuerdo con la prueba, no podemos convenir con la defensa que esas manifestaciones del fiscal perjudicaron los derechos sustanciales del acusado.

(c) Por último se queja la defensa de que el fiscal en su informe al jurado, dijera que el acusado sacó su revólver "para entrarle a tiros al primero que cogiera".

Habiendo objetado la defensa, la corte hizo las siguientes manifestaciones:

"LA CORTE: Sí, la corte entiende que no hay manifestaciones expresas en ese sentido."

"LA CORTE: Allí se disparó, pero son inferencias."

Considerando que tanto el fiscal como la defensa pueden hacer inferencias de la evidencia presentada, el fiscal podía inferir, con más o menos razón, que al disparar el acusado en la forma en que él lo hizo, equivalía a "entrarle a tiros al primero que cogiera." No encontramos motivo para revocar la sentencia por este fundamento.

*A nuestro juicio no existe ninguno de los errores señalados por el apelante. Procede, por lo expuesto, la confirmación de la sentencia.*

El Juez Asociado Sr. Córdova no intervino.