Pesante Martínez, Jueza Ponente
*831 TEXTO COMPLETO DE LA SENTENCIA
El Estado Libre Asociado de Puerto Rico, la Administración de Corrección y el Programa de Supervisión Electrónica comparecen por conducto de la Oficina del Procurador General, y solicitan que se revoque la Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama, que declaró con lugar la petición de mandamus presentada por el apelado, Sr. Mió Román Díaz. Mediante dicha Sentencia, el Tribunal de Primera Instancia ordenó a la Administración de Corrección a referir, evaluar y hacer elegible al Sr. Julio Román Díaz para el Programa de Supervisión Electrónica. Considerados los escritos presentados, resolvemos revocar la Sentencia apelada.
I
El 14 de enero de 2000, el Sr. Julio Román Díaz fue sentenciado a 12 años de cárcel por delitos cometidos el 13 de junio de 1999. Los delitos por los que fue cónvicto fueron asesinato en segundo grado e infracción al Artículo 4 de la Ley de Armas, 25 L.P.R.A. §414. Gomo consecuencia, éste extingue 12 años de reclusión en la Institución Correccional conocida como Guayama 500, clasificado bajo custodia mínima.
Luego de un tiempo en confinamiento, el apelado solicitó se le extendieran los beneficios del Programa de Supervisión Electrónica. La Administración de Corrección, mediante su Programa de Supervisión Electrónica, se negó a considerar o evaluarle para el aludido beneficio por estar éste excluido del mismo.
Ante esta situación, el 22 de mayo de 2003, Román presentó una petición de mandamus perentorio ante el Tribunal de Primera Instancia, Sala de Guayama. En la misma, sostuvo que era elegible para ser evaluado por el Programa de Supervisión Electrónica, en virtud del Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Núm. 6041, aprobado el 27 de octubre de 1999. Señaló que el referido Reglamento sólo excluye del beneficio de supervisión electrónica a los confinados convictos por asesinato en primer grado. Expuso que a pesar de que la Ley Núm. 49 de 26 de mayo de 1995, excluye de tal programa a los convictos por asesinato, sin especificar grados, no hace inelegible expresamente a los convictos por asesinato en segundo grado. El Sr. Román entiende que el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, supra, le da contenido a la Ley 49, supra, y expresa la intención de la Administración de Corrección, quien por contar con el peritaje o “expertise” en la materia, debe especificar, como lo hizo mediante el referido Reglamento, los criterios esbozados de forma general en la legislación.
El 23 de junio de 2003, la Administración dé Corrección compareció mediante escrito titulado “Moción en Cumplimiento de Orden y Solicitud de Desestimación”. Alegó, en síntesis, que aún no se había tomado una decisión final sobre la solicitud del Sr. Román al Programa de Supervisión Electrónica, por lo que la intervención del tribunal era prematura, y el confinado debía agotar los remedios administrativos antes de acudir al tribunal. Por otro lado, afirmó que independientemente del Reglamento invocado por el apelado, la Ley 49 dispone que todos los convictos por asesinato están excluidos de beneficiarse del Programa de *832 Supervisión Electrónica. Por tanto, concluyó que el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, supra, no podía prevalecer sobre la referida Ley.
El Sr. Román presentó, por su parte, una “Moción en Oposición a Desestimación y Réplica...”. Mediante el escrito, trajo a la atención del Tribunal la existencia de sentencias finales y firmes del Tribunal de Primera Instancia en las cuales se resuelve que la Administración de Corrección tiene un deber ministerial de referir y evaluar a confinados convictos por asesináto en segundo grado al Programa de Supervisión Electrónica por virtud del Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, que interpreta la Ley 49, supra. El apelado sostiene que la Administración de Corrección se ha allanado a ello en dichas ocasiones. Según el apelado, la Administración de Corrección no sólo no ha apelado tales determinaciones, sino que en otras ocasiones ha referido confinados sentenciados por asesinato en segundo grado al Programa de Supervisión Electrónica. Én mérito de lo cual, éste arguye que al presente caso le es de aplicación las doctrinas de impedimento colateral por sentencia y actos propios.
Así las cosas, mediante sentencia dictada el 13 de mayo de 2004, y archivada en autos el 28 de mayo de 2004, el Tribunal de Primera Instancia declaró con lugar la petición de mandamus del Sr. Román, y ordenó a la Administración de Corrección a cumplir con su deber ministerial de referir, evaluar y hacer elegible para el Programa de Supervisión Electrónica al confinado. Señaló que el deber ministerial de la agencia surgía del Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, que interpreta y da contenido a la Ley 49, supra. El Tribunal de Primera Instancia llegó a tal conclusión luego de un análisis hermenéutico a la luz de la interpretación del Artículo VI, sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico, la Ley Habilitadora de la Administración de Corrección, Ley 116 de 22 de julio de 1974, y los reglamentos aprobados por la agencia.
No conforme con la determinación del Tribunal de Primera Instancia, acude ante nos el Procurador General en representación del Estado Libre Asociado, la Administración de Corrección y el Programa de Supervisión Electrónica. Señalan la comisión del siguiente error:

“Erró el Tribunal de Primera Instancia al actuar deforma contraria a la ley que expresamente excluye a los convictos de asesinato del Programa de Supervisión Electrónica, ‘‘independientemente de los grados del delito. ”

Estos plantean que no procedía la expedición del auto de mandamus, toda vez que la Administración de Corrección no tenía el deber ministerial de evaluar al Sr. Román para el Programa de Supervisión Electrónica. Ello se debe a que al apelado le es de aplicación la Ley 49, que excluye del beneficio a los convictos por asesinato. La Administración de Corrección arguye que la ley prevalece sobre el reglamento, y contrario a lo resuelto por el Tribunal de Primera Instancia, su deber ministerial era excluir al Sr. Román del beneficio, como en efecto hizo. Planteó, además, que en la medida que el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, se interprete a los efectos de permitir la consideración para el Programa de convictos por asesinato en segundo grado, dicha parte del Reglamento sería nula por estar en contravención a la Ley 49, supra.
El apelado presentó oportunamente su “Escrito én Cumplimiento de Orden y en Oposición a la Apelación”. Mediante el mismo puntualizó que no erró el Tribunal de Primera Instancia, Sala Superior de Guayama, al resolver a su favor una petición de mandamus perentorio que ordena al Administrador de Corrección y sus funcionarios a evaluar y cualificarle para los programas de desvío y rehabilitación al amparo del Reglamento Núm. 6041, que es la interpretación de la agencia que tiene el “expertise ” sobre la Ley 49 del 26 de mayo de 1995, puesto que el reglamento excluye solamente a los convictos de asesinato en primer grado. En este sentido, el apelado sostiene que el Reglamento mencionado, no está en contravención a la Ley 49, sino que le da contenido específico a los criterios generales y básicos esbozados en ella, por virtud del conocimiento *833 especializado de la agencia que lo promulga.
El apelado trajo a la atención de este Tribunal que el 23 de abril de 2004, la Administración de Corrección aprobó el Reglamento Núm. 6797 de Enmienda al Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, del 4 de mayo de 2004. Mediante el mismo, modificó el inciso (1) del Artículo VII del Reglamento Núm. 6041 para que leyera “asesinato” en lugar de “asesinato en primer grado”. El apelado entiende que tal enmienda significa que la Administración de Corrección decidió cambiar la interpretación y contenido que le había otorgado a la Ley 49, supra, al eliminar la modalidad de primer grado del Reglamento. Lo anterior implica que del 4 de mayo de 2004 en adelante, fecha del cambio de interpretación, es que se excluyen del Programa de Supervisión Electrónica, los convictos por asesinato en segundo grado.
En relación al planteamiento de la Administración de Corrección en cuanto a que la interpretación que de la Ley 49 hizo el Tribunal de Primera Instancia daría lugar a resultados absurdos, ya que un convicto por asesinato en segundo grado se podría beneficiar del programa, mas no así un convicto por actos lascivos o incesto, el apelado recalcó el análisis que hiciere el Tribunal de Primera Instancia en cuanto al delito de asesinato sus modalidades y grados y la comparación con otros delitos. Expuso ejemplos de delitos, como el asesinato, para los cuales la gradación de las penas impuestas implica la diferencia en el trato y severidad de éstos dependiendo del grado o modalidad del mismo. De igual forma, expuso beneficios y programas para los cuales un convicto por asesinato en segundo grado es elegible, como libertad a prueba y libertad bajo palabra, por lo que resultaría ilógico que no fuera elegible para supervisión electrónica.
Por último, el apelado plantea que las doctrinas de actos propios e impedimento colateral por sentencia son de aplicación al presente caso. El Sr. Román aduce que la Administración de Corrección no puede allanarse inicialmente a una sentencia adversa dictada en su contra en ún foro de Primera Instancia, permitir que la misma advenga final y firme, cumplir con lo requerido en un mandamus en un caso y posteriormente, cambiar de parecer y actuar discriminatoriamente violando la igual protección de las leyes, al no querer hacer lo mismo con otro peticionario en la misma situación. Estos se consideran la misma parte para efectos de la doctrina de impedimento colateral por sentencia, pues los confinados convictos por asesinato en segundo grado qifó solicitan ser evaluados por el Programa de Supervisión Electrónica están unidos por vínculos de solidaridad.
Nos toca determinar si erró el Tribunal de Primera Instancia al expedir el _auto de 'mandamus tras concluir que la Administración de Corrección tenía el deber ministerial de referir, evaluar y hacer elegible a un confinado que cumple sentencia por el delito de asesinato en segundo grado.
II
El Artículo 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A see. 3421, define el auto de mandamus como un recurso altamente privilegiado, dictado por un tribunal de justicia a nombre del Estado Libre Asociado de Puerto Rico y dirigido a alguna persona, corporación o tribunal de inferior jerarquía dentro de su jurisdicción, requiriéndoles el cumplimiento de algún acto dentro de sus atribuciones o deberes ministeriales. La frase “altamente privilegiado” significa que la expedición del auto no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. Asoc. Res. Piñones, Inc. v. J.C.A., 142 D.P.R. 599 (1997).
Por su parte, la Regla 55 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 55, dispone sobre el mandamus que sólo procede expedir el auto cuando “el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo.” La expedición del aludido auto procede para hacer cumplir un deber ministerial claramente establecido por ley o que resulte del empleo, cargo o función pública. Noriega v. Hernández Colón, 135 D.P.R. 406 (1994); 32 L.P.R.A. sees. 3421 y 3422.
Debido a lo anterior, en nuestra jurisdicción, el tribunal sólo cuenta con discreción para expedir un auto de mandamus, cuando el peticionario demuestre que reclama un derecho claro y definido, respecto al cual el *834 promovido no tiene discreción para denegarlo; Es decir, el deber ministerial que reclama debe ser uno impuesto por ley que no permite discreción en su ejercicio, sino que es mandatorio o imperativo. Por el contrario, cuando el acto que se pretende sea cumplido envuelve el ejercicio de discreción o juicio, éste no es ministerial, y por ende, está fuera del ámbito del recurso de mandamus. Ve a David Rivé, Recursos Extraordinarios, Programa de Educación Continua, Facultad de Derecho, Universidad Interamericana, 2da ed., San Juan, 1996, p. 107.
Según lo resuelto por el Tribunal de Primera Instancia, el deber ministerial de la Administración de Corrección surge de los Reglamentos correspondientes a los procedimientos del Programa de Supervisión Electrónica promulgados por ésta.
El Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Núm. 5065 de 28 de febrero de 1994 (en adelante, el Reglamento), se adoptó conforme a las disposiciones de la Ley Núm. 116 de 22 de julio de 1974, Ley Orgánica de la Administración de Corrección y la Ley Núm. 170 de 12 de agosto de 1988. El artículo VI del Reglamento establece los criterios de elegibilidad para la concesión del beneficio de supervisión electrónica. Entre ellos se incluyen:

“A) Aceptación voluntaria del participante para ser supervisado en su hogar por medios electrónicos.

B) ...

Q...

D) El plan de salida debe ser uno viable en sus tres áreas:

1. hogar

2. oferta de empleo de estar disponible

3. opinión favorable del vecindario inmediato

E) Que el confinado no cumpla sentencia actual rii tenga antecedentes en ninguno de los siguientes delitos:

1. Violación, sodomía, bestialismo, actos lascivos e impúdicos...

F) La información obtenida en la Institución y en la investigación que se realice deberá evidenciar que el confinado no constituye un riesgo para la seguridad propia o de la comunidad.

G) ...

H)...

/)...
J) La distancia entre la residencia de los perjudicados y el participante no deberá constituir riesgo para . ninguna de las partes.

K)...

L)...

*835 El artículo VIH del Reglamento prescribe el procedimiento para seleccionar los candidatos a recibir el beneficio de supervisión electrónica. El referido artículo dispone que el Director de la institución penal donde se encuentre el confinado, designará el personal que estará a cargo de identificar a los candidatos a ser referidos al Programa de Supervisión Electrónica. Por su parte, los Técnicos de Servicios Sociopenales evaluarán los expedientes de los candidatos aplicando los criterios de elegibilidad esbozados en él Artículo VI. Además, entrevistarán a los candidatos para verificar si aceptan voluntariamente participar del Programa de Supervisión Electrónica. Finalmente, los Técnicos de Servicios Sociopenales recomendarán los candidatos al Director del Programa de Supervisión Electrónica, quien, a su vez, referirá los casos a la Oficina Local del Área de la Comunidad para que se realice la investigación correspondiente. El Director del Programa luego recomendará al Administrador de Corrección los candidatos seleccionados para recibir el beneficio.
En 1995, la Asamblea Legislativa aprobó la Ley Núm. 49 de 26 de mayo de 1995. Ésta enmendó la Ley Orgánica de la Administración de Corrección, a los fines de facultar expresamente al Administrador de Corrección a establecer y reglamentar programas de supervisión electrónica, disponer las causas de exclusión de dicho beneficio y demás programas de desvío o tratamiento y rehabilitación establecidos por la Administración de Corrección. Véase, 1995 Leyes de Puerto Rico, p. 278. Sin embargo, en la Exposición de Motivos de la Ley, la Asamblea Legislativa expresó que entendía que era “...necesario establecer por ley unos criterios básicos para los programas de desvío o tratamiento y rehabilitación creados y operados por la Administración de Corrección. Al igual que para la libertad a prueba, la libertad bajo palabra y la pena de restricción domiciliaria, consideramos la política pública en cuanto a los criterios excluyentes para este conjunto de programas'debe ser establecido mediante legislación al efecto. ” Véase, 1995 Leyes de Puerto Rico, p. 281.
A tales fines, mediante la referida Ley 49, la Asamblea Legislativa añadió el Artículo 10-A a la Ley Orgánica de la Administración de Corrección, supra, que excluye a determinadas personas de los beneficios del Programa de Supervisión Electrónica:

“No serán elegibles para participar en los programáis de desvío o tratamiento y rehabilitación establecidos por la Administración, de conformidad con las facultades que le confiere esta ley, ni en el Programa de Hogares de Adaptación Social, las siguientes personas:

a. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

(1) asesinato, violación, incesto, sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de 14 años; ’’

La Ley 49, supra, a diferencia de lo establecido en el Reglamento Núm. 5065 de 1994, excluyó de participar del Programa de Supervisión Electrónica a los convictos por asesinato.
Posteriormente se aprobó el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 6041, efectivo el 26 de noviembre de 1999, conforme a las disposiciones del Artículo 4.5 y 10 de la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 supra, de la Ley Núm.. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (“LPAU”), 3 L.P.R.A. §§ "2101 et seq. y dé los poderes conferidos por el Plan de Reorganización Número 3 de 28 de octubre de 1993, por el cual se creó el Departamento de Corrección y Rehabilitación. El mismo tiene como propósito'el establecer los procedimientos para el Programa de Supervisión Intensa por Medios Electrónicos.
Sobre los criterios de elegibilidad, este Reglamento Núm. 6041, supra, dispuso en su Artículo VE:

*836
“Estarán excluidos para ser considerados para este privilegio las personas que están cumpliendo por los siguientes delitos:

1. Asesinato “en primer grado”.

2. Violación.

3. Incesto.

4. Sodomía.

5. Actos lascivos o impúdicos, cuando la víctima fuere menor de catorce (14) años... ”.

A diferencia de lo establecido en la Ley 49, el nuevo Reglamento añadió la modalidad de primer grado al delito de asesinato. Tal actuación implica que sólo excluyó del beneficio de supervisión electrónica a los confinados cumpliendo sentencia por asesinato en primer grado, no así a los convictos por asesinato en segundo grado.
No obstante, el 23 de abril de 2004, la Administración de Corrección aprobó el Reglamento Núm. 6797 de Enmienda al Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, del 4 de mayo de 2004. Mediante el mismo modificó el inciso (1) del Artículo VII del Reglamento Núm. 6041 para que leyera “asesinato” en lugar de “asesinato en primer grado”.
Los procedimientos y deberes promulgados en el Reglamento Núm. 6041, en relación con los criterios de elegibilidad para el beneficio de supervisión electrónica responden a las disposiciones de la Ley Orgánica de la Administración de Corrección. Esta establece como función de la Administración el formular:
“ ..la reglamentación necesaria para establecer programas de supervisión electrónica, mediante los cuales la población correccional del sistema que cualifique para ello y voluntariamente acepte participar, pueda cumplir la sentencia fuera de la institución correccional. El reglamento establecerá los criterios, condiciones y requisitos de elegibilidad para dichos programas y para revocar la participación de los miembros de la población correccional en los mismos, cumpliendo con el debido proceso de ley. ” Ley Núm. 116, supra, 4 L.P. R.A. §1112(e)
En cuanto a la facultad de reglamentación delegada a las agencias administrativas, en este caso a la Administración de Corrección, el Tribunal Supremo ha expresado que “lo que actualmente se requiere como medida fiscalizadora es que las agencias aprueben reglamentos que delimiten o precisen sus facultades al amparo de la ley y así evitar actuaciones ilegales o arbitrarias”. Véase, Luán Investment Corp. v. Román, 125 D.P.R. 533 (1990). En nuestro ordenamiento jurídico, la Ley prevalece sobre los reglamentos. La ley habilitadora de la agencia administrativa define y delimita su ámbito de acción. Cualquier transgresión a lo pautado por la ley respecto a los linderos de acción constituye una acción ilícita, pues fue efectuada sin autoridad para ello. Por lo tanto, un reglamento para implantar una ley, puede complementarla, pero no estar en conflicto con ella. Un reglamento contrario a la ley, sería nulo. Véase, Martínez v. Departamento de Educación, 148 D.P.R. 648 (1999); P.S.P. v. Comisión Estatal de Elecciones, 110 D.P.R. 400 (1980); Infante v. Tribunal Examinador de Médicos, 84 D.P.R. 308 (1961).
Mediante la Ley 49 de 1995, la Asamblea Legislativa excluyó de los beneficios de supervisión electrónica a todo convicto por el delito de asesinato. Nada dispuso en cuanto a los grados del delito. Al interpretar dicha ley, debemos tener presente principios fundamentales de las reglas de hermenéutica. Al interpretar disposiciones específicas de una ley, los tribunales debemos considerar cuáles fueron los principios perseguidos por la *837 Asamblea Legislativa al aprobar la misma. La obligación del tribunal es imprimirle efectividad a la intención legislativa, es decir el propósito que persigue la ley. Véase, Irizarry v. Johnson & Johnson, 2000 J.T.S. 27, 150 D.P.R. _ (2000).
En este sentido, es pertinente recordar que el delito de asesinato está tipificado por los artículos 82, 83 y 84 del Código Penal de Puerto Rico, 33 L.P.R.A. §4001-4003. El asesinato constituye un sólo delito; a saber, dar muerte a un ser humano con malicia premeditada. Este se divide en grados en atención a la perversidad demostrada por el acusado y al sólo efecto de la imposición de la pena. Pueblo v. Ortiz , 62 D.P.R. 258 y Pueblo v. Colón, 65 D.P.R. 760. La diferencia entre los dos grados del asesinato consiste en que en el asesinato en primer grado, la muerte se realiza con malicia premeditada y deliberada, mientras que en el de segundo grado, la muerte es maliciosa y premeditada, pero sin que medie deliberación. Pueblo v. Blanco, 77 D.P.R. 767. La malicia premeditada, que es el elemento mental requerido en el delito genérico de asesinato, implica la ausencia de justa causa o excusa y conciencia al ocasionar la muerte de un semejante. Por otro lado, la deliberación es la resolución o decisión de matar, después de darle alguna consideración. Pueblo v. Rosario Orangel, 2003 J.T.S. 167.
El asesinato es un delito que, por su definición y naturaleza, conlleva un acto perverso, malintencionado y contrario a los valores éticos y morales de nuestra sociedad. Denota un estado o condición en el actor, compuesto por una deficiencia inherente en su sentido de moral y rectitud, ello como resultado de haber dejado de preocuparse por el respeto y la seguridad de la vida humana. Rivera Pagan v. Supte. de la Policia, 135 D.P. R. 789 (1994). El bien jurídico tutelado es el ser humano; por ello es que este delito constituye la conducta punible que con el mayor desvalor tipifica el legislador. La severidad de la pena corresponde a la política pública. La privación de una vida humana es lo qüe debe medir la severidad de la pena. D. Crump y S.W. Crump, In Defense of the Felony Murder Doctrine, 8 Harv. J.L. & Pub. Pol'y 359, 387 (1985).
Por otra parte, al crear el Departamento de Corrección y Rehabilitación, la Asamblea Legislativa declaró como política pública que el sistema de corrección debe estar centrado en dos objetivos básicos. De una parte, proteger a la sociedad y contribuir a la seguridad pública," lo que para el Pueblo de Puerto Rico constituye prioridad; y de otra parte, rehabilitar a los confinados y a los transgresores. Véase, 1995 Leyes de Puerto Rico, p. 281. Al promulgar las normas esbozadas en la Ley 49 de 1995, supra, la Asamblea Legislativa expuso que había tomado en consideración la gravedad de la conducta delictiva, así como la seguridad pública que reclama la comunidad para su tranquilidad y bienestar. Véase, 1995 Leyes de Puerto Rico, p. 281.
III
A tenor con lo expuesto en cuanto a la política publica en relación con el delito de asesinato y la severidad de la pena y los objetivos y consideraciones de la Ley 49, la Administración de Corrección no puede conceder el beneficio de supervisión electrónica a las personas que eátén cumpliendo sentencia por el delito de asesinato en segundo grado. Interpretar la ley de forma que los confinados que cumplen sentencia por asesinato en segundo grado puedan participar del programa de supervisión electrónica, no sólo contraviene la jurisprudencia interpretativa del delito de asesinato, sino que es contraria la intención legislativa al aprobar dicha ley.
El Artículo VII del Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Núm. 6041, supra, al excluir del programa sólo a los convictos por asesinato en primer grado y permitir la consideración para el Programa, de convictos por asesinato en segundo grado, resulta nulo en cuanto a dicha parte por estar en contravención a la Ley 49. En el caso de autos, tanto al momento de la comisión de los hechos como al momento de dictarse sentencia, la referida ley estaba vigente, por lo que le es de aplicación al Sr. Román. Toda vez que el Sr. Román cumple una sentencia por el delito de asesinato en segundo grado, éste está excluido por la Ley 49 de ser elegible para el programa de supervisión electrónica.
Como consecuencia de lo anterior, la Administración de Corrección no tenía el deber ministerial de referir, *838 evaluar y hacer elegible al Sr. Román para el programa de supervisión electrónica. El apelado no era acreedor a ningún derecho, el cual la Administración de Corrección estuviera obligada a ejecutar por alguna ley. El deber ministerial tampoco surgía del Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, supra, del 1994 ó 1999, pues la disposición que se invoca por el apelado resulta nula al estar en contravención a la Ley 49 que prevalece.
Como indicáramos anteriormente, la obligación del tribunal es imprimirle efectividad a la intención legislativa; es decir, el propósito que persigue la ley. Así lo ha reiterado el Tribunal Supremo:
“Los tribunales no tenemos la facultad de menospreciar la letra de una disposición de ley, cuando ésta es clara[...J. Si existe una incongruencia, es a la Legislatura a quien compete corregirla. Ya hemos establecido que: El juez es un intérprete, y no un creador. Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministren un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un sólo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa. ” Clínica Julia v. Sec. de Hacienda, supra, a la pág. 521. Vea Pueblo v. Martínez Yanzanis, 142 D.P.R. 871, 878 - 879.
La Ley 49 es clara. Excluye de los beneficios del programa de supervisión electrónica a los convictos cumpliendo sentencia por asesinato, y no hace'distinción de grados. Si se pretende conceder el beneficio a los convictos de asesinato en segundo grado, es a la legislatura a quien compete enmendar la ley.
Mediante esta sentencia, pretendemos también instar a la Administración de Corrección a poner un alto a la ambivalencia y falta de uniformidad en el manejo de los casos que plantean similar controversia. Actúan de esa forma al allanarse a unos casos, y apelar otros, lo que desemboca en incertidumbre, esperanzas frustradas y trato desigual entre los confinados para con los cuales tienen el deber constitucional de proveer medios para su rehabilitación moral y social.
IV
Por los fundamentos que anteceden, resolvemos que no procedía el recurso de mandamus en este caso, por lo que erró el Tribunal de Primera Instancia. En consecuencia, se revoca la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General